BELT *v.* RITTER

1. APPEAL AND ERROR—SUMMARY JUDGMENT—DENIAL—COURT RULES.
   The Court of Appeals may grant leave to appeal from a denial of summary judgment (GCR 1963, 806.2[3]).

2. MOTIONS—SUMMARY JUDGMENT—RENEWAL OF MOTION.
   Renewal of a motion for summary judgment is entirely proper, where the first motion for summary judgment was not denied absolutely, but only "until answer is filed" (GCR 1963, 117).

3. FALSE IMPRISONMENT—FALSE ARREST—OFFICERS.
   An action for false arrest or false imprisonment will not lie against an officer who merely executes a warrant, fair on its face, from a court having proper jurisdiction.

4. PROCESS—ABUSE OF PROCESS.
   An action for the abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue.

5. MALICIOUS PROSECUTION—POLICEMEN—CIVIL ACTION—IMMUNITY.
   Police officers *held* not to be immune from liability in a civil action for malicious prosecution.

6. MALICIOUS PROSECUTION.
   The action for malicious prosecution has always been carefully circumscribed by the courts in recognition of its potential for abuse.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 104.
[2] 37 Am Jur, Motions, Rules and Orders § 19.
[3, 9] 32 Am Jur 2d, False Imprisonment § 67.
[4] 1 Am Jur 2d, Abuse of Process § 2.
[5] 34 Am Jur, Malicious Prosecution § 87.
[6] 34 Am Jur, Malicious Prosecution § 5.
[7] 34 Am Jur, Malicious Prosecution § 6 *et seq.*
[8] 34 Am Jur, Malicious Prosecution § 72.
[10] 34 Am Jur, Malicious Prosecution § 86.

7. Malicious Prosecution—Elements of Action.

A plaintiff, in order to sustain a charge of malicious prosecution, must prove that a criminal prosecution was instituted against him which terminated in his favor, that defendant had no probable cause for the prosecution, and that defendant acted from malicious motives.

8. Malicious Prosecution—Probable Cause.

Probable cause will be considered established so as to prevent a judgment for malicious prosecution against a person, where that person fully and fairly states the facts known to him to a prosecuting attorney and signs a complaint on the advice of the prosecuting attorney.

9. Malicious Prosecution—Probable Cause—Officer.

An officer is protected from an action for malicious prosecution if he has a good-faith belief that there is probable cause for prosecution, even if it turns out that probable cause did not exist in fact.

10. Malicious Prosecution—Officers—Public Service Commission.

Recommendations for issuance of warrants which were signed by assistant prosecutors and accompanied the criminal complaints against plaintiff will shield enforcement officers of the Michigan Public Service Commission, who caused the arrest and prosecution of plaintiff, from civil action for malicious prosecution, if the officers stated the facts known to them freely and fairly to the prosecutor.

Appeal from Oakland, Frederick C. Ziem, J. Submitted Division 2 March 3, 1969, at Detroit. (Docket No. 4,670.) Decided July 31, 1969. Leave to appeal granted March 31, 1970. See 383 Mich 775.

Complaint by Marvin Belt against Danny C. Ritter, Lyle L. Stephens, Paschal Turner, and Elmer Neigebauer, for malicious prosecution, false arrest, false imprisonment, illegal interference with private contracts, abuse of process, and violation of civil rights. Summary judgment for defendants granted on the counts of illegal interference with private contracts and violation of civil rights and

denied on the other counts. Defendants appeal on leave granted from denial of summary judgment as to the other counts. Reversed as to the counts in false arrest, false imprisonment, and abuse of process, and remanded for trial of the count in malicious prosecution, with instructions.

*Mansfield, Sulzbach & Jones,* for plaintiff.

*Matheson, Dixon & Bieneman,* for defendants.

Before: LESINSKI, C. J., and FITZGERALD and V. J. BRENNAN, JJ.

LESINSKI, C. J. Plaintiff Marvin Belt was the owner and operator of a truck leasing business in Michigan, and defendants were all enforcement officers for the Michigan Public Service Commission (hereafter referred to as the MPSC).[1] In performing their duties of enforcing the laws of the State of Michigan regulating the trucking industry, defendants came to believe that Marvin Belt was not running a regular leasing operation, but was actually hauling goods for hire under cover of his truck leasing arrangements. They accordingly caused the arrest and prosecution of plaintiff several times between October, 1961 and March, 1964, on the charge of hauling for hire without MPSC authorization, CL 1948, § 477.1 (Stat Ann § 22.548). The first such prosecution resulted in conviction, both before a justice of the peace and upon appeal to the Oakland county circuit court (case No. CR 19907). Plaintiff was also convicted by a jury of hauling for hire without authority on July 26, 1962, but that case

---

[1] Defendant Turner was chief of the enforcement section of the MPSC, defendant Stephens was assistant chief of the section, and defendants Neigebauer and Ritter were enforcement inspectors.

was reversed on appeal on a technicality in the issuance of the warrant.

However, two other prosecutions initiated by defendants against plaintiff for hauling for hire without authority (relating to shipments on July 2, 1962 and January 14, 1963), ended in acquittal for plaintiff. Based on these two prosecutions and related events, plaintiff has brought the instant civil action against defendants, charging malicious prosecution, false arrest, false imprisonment, illegal interference with private contracts, abuse of process, and violation of plaintiff's civil rights under color of law.

Defendants responded to plaintiff's complaint with a motion for summary judgment which was denied pending the filing of an answer. After an answer was filed and a pretrial conference held, defendants filed another motion for summary judgment, supported by affidavits and documents. The trial judge granted summary judgment for defendants on the counts for illegal interference with private contracts and violation of civil rights, but he denied it on all the other counts.

Defendants applied to this Court for leave to appeal, pursuant to GCR 1963, 806.2 (see 378 Mich lii), from the lower court's denial of their motion for summary judgment as to all counts except the two, and this Court granted defendants leave to appeal by order of June 13, 1968.

On the several issues presented by the parties on this appeal, all but one can be easily and quickly resolved.[2]

---

[2] Plaintiff raises two insubstantial procedural claims: (1) that a denial of summary judgment is not appealable to this Court, and (2) that denial of the first motion for summary judgment foreclosed the later renewal of the motion. The first point is completely answered by GCR 1963, 806.2(3), which empowers this Court to grant leave to appeal from "any order" of the circuit court not appealable by right, as we did in this case. The second point could

Plaintiff's claims for false arrest and false imprisonment are all predicated upon arrests made pursuant to warrants issued by justices of the peace, which appear to be fair on their face.[3]   Plaintiff does not challenge the validity of these warrants, and we can find no defects obvious on their faces. It has long been the law in this State that an action for false arrest or false imprisonment will not lie against an officer who merely executes a warrant, fair on its face, from a court having proper jurisdiction. *Brown* v. *Hadwin* (1914), 182 Mich 491; *Bridgman* v. *Bunker* (1968), 12 Mich App 44.   It follows that defendants should have been granted summary judgment on the counts for false arrest and false imprisonment in this case.

Plaintiff also failed to state a cause of action for abuse of process on the facts presented.   " 'This action for the abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue.' "   *Spear* v. *Pendill* (1911), 164 Mich 620, 623, quoting 32 Cyc, p 541. See, also, *Moore* v. *Michigan National Bank* (1962), 368 Mich 71.   Plaintiff does not allege that the process in question was used other than to prosecute

be answered simply by pointing out that GCR 1963, 117(1), allows a defendant to move for summary judgment "at any time".   However, it is clear in this case that the first motion for summary judgment was not denied absolutely, but only "until answer is filed", so that it was entirely proper to renew the motion later.

[3] We have before us in the record three warrants for the arrest of Marvin Belt: one issued by Justice of the Peace Robert Anderson of Novi township, Oakland county, on July 12, 1962, upon complaint of defendant Lyle L. Stephens and with a recommendation for issuance of warrant signed by assistant prosecutor John O'Brien; one issued by Justice of the Peace Gordon W. Britten of Grass Lake township, Jackson county, on October 24, 1963, upon complaint of defendant Elmer Neigebauer and with a recommendation for issuance of warrant signed by assistant prosecutor Hal W. Ziegler; and one issued from the bench by Justice of the Peace Britten on March 3, 1964, for contempt in failing to appear on trial date.   The arrests or detentions complained of by plaintiff all appear to have been pursuant to one or another of these warrants.

him for hauling for hire without proper authority.
His only real complaint is that defendants wrong-
fully caused the process to issue, but that is action-
able, if at all, only as malicious prosecution. Sum-
mary judgment should have been granted for de-
fendants on the claim for abuse of process.

This leaves only the count for malicious prose-
cution. Defendants' primary contention on this
appeal is that summary judgment should have been
granted because police officers in Michigan should
have immunity from suit for malicious prosecution,
such as was declared in California by the case of
*White* v. *Towers* (1951), 37 Cal 2d 727 (235 P2d
209, 28 ALR2d 636). This question of police im-
munity from civil suit for malicious prosecution has
never, to our knowledge, been raised in Michigan.[4]
This case squarely presents the issue.

*White* v. *Towers, supra,* declared full immunity
for peace officers (in that case, a State fish and
game investigator) from suit for malicious prose-
cution, even where the officer acts maliciously and
without probable cause, so long as he acts within
the scope of his authority. The Supreme Court of
California identified the conflict which poses the
central philosophical problem in cases such as this:
on the one hand, there is the public policy of "pro-
tecting individual citizens from oppressive official
action"; on the other hand, there is a real need of
"promoting the fearless and effective administra-
tion of the law for the whole people by protecting
public officers from vindictive and retaliatory dam-

---

[4] It has always been a principle of the common law that judges
are immune from civil liability for their judicial acts, and this is
well-established in Michigan. *Mundy* v. *McDonald* (1921), 216 Mich
444. Our Court has recently extended to public prosecutors a similar
immunity from suit for acts done in their official capacity. *Bloss*
v. *Williams* (1968), 15 Mich App 228. We find no Michigan case
which considers whether police officers should have a like immunity.

age suits".[5]  The court decided that the latter con-
sideration is the more important, and it justified
its denial of civil redress to citizens injured by
"oppressive official action" by saying that a crim-
inal prosecution for the official misdeeds would vin-
dicate the victim to some extent and would serve
the public better than a civil damage action.

A number of other cases have adopted the same
approach, so that it is generally stated that the
allowance of immunity to police officers is the "bet-
ter view", or the prevailing one.[6]  However, there
is a direct split of authority on this point; a number
of cases have denied total immunity from suit for
malicious prosecution to police officers, even when
acting within the scope of their authority.  *Atkin-
son* v. *Birmingham* (1922), 44 RI 123 (116 A 205,
36 ALR 366); *Motley* v. *Dugan* (Mo App, 1945),
191 SW2d 979; *Vesey* v. *Connally* (1960), 112 Ohio
App 225 (175 NE2d 876); *Wendelboe* v. *Jacobson*
(1960), 10 Utah 2d 344 (353 P2d 178).  We are in-
clined to agree with these latter cases, for several
reasons.

We certainly agree with the proposition that our
police officers should be encouraged to enforce the
law vigorously.  However, we do not share the
fear, stated in *White* v. *Towers, supra,* and other
cases, that a limited liability for malicious prosecu-
tion would force policemen to become timid in doing
their job.  No evidence other than judicial suppo-
sition has been presented for such a view.

On the other hand, the citizen who is injured in
the rare instance of genuine malicious prosecution
by a police officer will not have an adequate remedy

---

[5] *White* v. *Towers* (1951), 37 Cal 2d 727, 729 (235 P2d 209, 28
ALR2d 636).

[6] Annotation: Civil liability of law enforcement officers for mali-
cious prosecution, 28 ALR2d 646.  Comment: Malicious prosecution
by public officers, 32 NC L Rev 360 (1954).

in the absence of the common-law action for malicious prosecution. Except in the case of a sheriff, there is not the possibility of electoral defeat of the malefactor which is sometimes mentioned as a sufficient remedy against judges and prosecutors. Criminal or administrative sanctions are also of questionable efficacy since the officials who would be responsible for applying those sanctions are likely to be the same who have an interest in maintaining good relations with police officers. But even rigorously applied sanctions would have the effect of vindicating only the interests of society in general. The particular citizen may have suffered a variety of injuries which would be compensated by a tort judgment but not by a criminal prosecution.[7] He should be allowed his traditional tort remedy unless serious considerations of public policy weigh otherwise. As has already been pointed out, they do not.[8]

The action for malicious prosecution has always been carefully circumscribed by the courts, in recognition of its potential for abuse. *Roblyer* v. *Hoyt* (1955), 343 Mich 431, 435; Prosser, Torts (3d ed), § 113, p 859. Thus there are safeguards already built into the law of malicious prosecution which enable us to allow the action against police officers without fear that it can be used unfairly against them. In order to sustain the charge of malicious prosecution, a plaintiff must prove that a criminal prosecution was instituted against him which terminated in his favor, that defendant had no probable cause for the prosecution, and that defendant

---

[7] Among the possible items of damage from malicious prosecution, Prosser lists harm to reputation and credit, humiliation and mental suffering, harm to health, loss of time due to arrest or necessary defense, the expenses of defense, and loss of employment, as well as the possibility of punitive damages. Prosser, Torts (3d ed), pp 869, 870.

[8] For similar evaluation of policy considerations, see 32 NC L Rev 360 (1954), and 23 Temp LQ 246 (1950).

acted from malicious motives. *Drobczyk* v. *Great Lakes Steel Corporation* (1962), 367 Mich 318; *Roblyer* v. *Hoyt, supra; Thomas* v. *Bush* (1918), 200 Mich 224. There must be both the absence of probable cause and the presence of malice. If plaintiff fails to prove either of these key elements, he will lose his case. The main focus is usually upon probable cause, because if this is established, it becomes irrelevant whether defendant was also motivated by malice. Prosser, Torts (3d ed), § 113, pp 859, 860. Also, there is a consideration of defendant's good faith involved in the determination of probable cause, so that it is sometimes said that malice may be inferred from lack of probable cause, though the converse inference is not permitted. *Drobczyk* v. *Great Lakes Steel Corporation, supra,* p 323.

It has been held repeatedly in Michigan that where a person fully and fairly states the facts known to him to a prosecuting attorney, and signs the complaint on his advice, probable cause will be considered established so as to prevent a judgment for malicious prosecution against that person. *Modla* v. *Miller* (1955), 344 Mich 21; *Baker* v. *Barach* (1941), 297 Mich 219; *Thomas* v. *Bush, supra.* This is true for police officers as much as for anyone else. In addition, an officer is protected if he has a good-faith belief that there is probable cause, even if it turns out that probable cause did not exist in fact.[9] It would thus appear that the only situation in which an action for malicious prosecution would properly lie is where a police officer knowingly swears to false facts in a complaint, without which there is no probable cause.[10]

[9] Although such a situation may seem hard to imagine, it is possible. See, *e.g., Atkinson* v. *Birmingham* (1922), 44 RI 123 (116 A 205, 36 ALR 366).

[10] When a police officer acts without complaint and warrant, the proper redress would be not an action for malicious prosecution, but one for false arrest or false imprisonment.

When the action is thus defined, it becomes unnecessary to determine whether a defendant police officer was acting "within the scope of his authority", since the tests to be applied to his behavior will be the same whether he is or is not so acting.[11]

Turning to the facts of the instant case, it is clear that both of the complaints in question were accompanied by recommendations for issuance of warrants signed by assistant prosecutors.[12]  This in itself is enough to shield defendants from suit for malicious prosecution under the rule already referred to, if they stated the facts as known to them freely and fairly to the prosecutor.  His signed recommendation for issuance of a warrant should certainly be considered equivalent to advising a defendant to sign the complaint.  *Modla* v. *Miller, supra; Baker* v. *Barach, supra; Thomas* v. *Bush, supra.*

Therefore, the only possible issue that could go to trial in this case would be a factual one, whether defendants knowingly swore falsely to the facts stated in the complaints, thereby negating probable cause and demonstrating malicious intent.  Plain-

---

[11] It may be noted, however, that MPSC inspectors are given by statute "all the powers conferred upon peace officers by the general laws of this state", CL 1948, § 479.13 (Stat Ann § 22.578), so that their investigative authority is necessarily quite broad.  In addition, the motor carrier act, as amended by PA 1957, No 173, defines "contract motor carrier of property" as one who transports property for hire, "either directly or through any device or arrangement".  CLS 1961, § 475.1(i) (Stat Ann 1969 Cum Supp § 22.531[i]).  This clearly contemplates that the MPSC, through its inspectors, should have the authority to investigate and regulate lessors of trucks who use their lease operations as a "device or arrangement" to haul property for hire.  The Attorney General of Michigan has so interpreted the statute in an opinion: "I therefore advise that, in my opinion, inspectors appointed by the public service commission have authority to enforce the provisions of the Michigan vehicle code and the motor carrier safety act, including enforcement of the latter against private not-for-hire carriers."  OAG 1959, No 3208, p 133, July 8, 1959.  See, also, *People* v. *Bissonette* (1950), 327 Mich 349.

[12] See footnote 3, *supra.*

tiff does allege in his pleadings that defendants
swore falsely, and this issue is not cleared up by
the affidavits in the record. Therefore, the case
will have to be sent back for the taking of proofs
on this issue.

There are two aspects or elements to the crime
of hauling for hire without authority, as it was
charged in the complaints in this case. One element
is that plaintiff's lease arrangement was a sham
behind which he acted illegally and the other ele-
ment is that he actually hauled goods for hire at a
certain place and time. Defendants necessarily
swore to both of these elements in order to estab-
lish a *prima facie* offense.

The question as to whether defendants knowingly
swore falsely regarding the facts in charging that
plaintiff's lease was a sham requires an interpre-
tation of the complex subjective judgment of the
defendants in bringing the charge. Such a deter-
mination cannot be made except by trial. Further,
we have no evidence on the record before us as to
the truth of the statements in the complaints relat-
ing to actual hauling of goods by plaintiff's trucks
and drivers on specific dates and at specific places.
Plaintiff alleges the statement of these facts to be
false and made by defendants knowing them to be
false. Therefore, plaintiff is entitled to a trial to
prove that defendants had no factual basis for their
allegations and charge. We remand for trial of
this narrowly-defined issue.

Reversed and remanded for trial in accordance
with this opinion. No costs, neither party having
prevailed in full.

All concurred.