KING v ARBIC

Docket No. 94359. Submitted February 11, 1987, at Lansing. Decided April 21, 1987.

Thomas C. King brought an action against Donald Arbic, a Michigan State Police trooper, and others in the Livingston Circuit Court. The allegations against Arbic were malicious prosecution, negligent prosecution and intentional infliction of emotional distress. Arbic moved for summary disposition based on lack of a genuine issue of material fact and governmental immunity. The court, Stanley J. Latreille, J., granted the motion. Plaintiff appealed.

The Court of Appeals *held:*

1. A motion for summary judgment for failure to state a cause of action upon which relief can be granted is the proper way to raise the issue of governmental immunity in a tort action.

2. Liability for intentional infliction of mental distress exists only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. There could be no factual development from the record to support a finding of intentional infliction of emotional distress.

3. No cause of action exists for negligent prosecution in this

REFERENCES

Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 4-7, 17.

Am Jur 2d, Malicious Prosecution §§ 6, 8, 68.

Am Jur 2d, Municipal, School, and State Tort Liability § 45 *et seq.*

Am Jur 2d, Negligence §§ 32-65, 127.

Am Jur 2d, States, Territories, and Dependencies § 99 *et seq.*

Am Jur 2d, Summary Judgment §§ 3, 13.

Civil liability of law enforcement officers for malicious prosecution. 28 ALR2d 646.

See also the annotations in the Index to Annotations under Police and Law Enforcement Officers.

case. Defendant owed plaintiff no duty and, if he did owe plaintiff a duty, he did not breach that duty.

4. Plaintiff's negligent prosecution claim is barred by governmental immunity.

5. Plaintiff's malicious prosecution claim is barred by governmental immunity.

Affirmed.

1. GOVERNMENTAL IMMUNITY — SUMMARY JUDGMENT.

A motion for summary judgment for failure to state a cause of action upon which relief can be granted is the proper way to raise the issue of governmental immunity in a tort action (GCR 1963, 117.2[1]; now MCR 2.116[C][8]).

2. GOVERNMENTAL IMMUNITY — SUMMARY JUDGMENT.

A plaintiff faced with a defendant's motion for summary judgment based upon governmental immunity has the burden of pleading facts in avoidance of immunity.

3. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Liability for intentional infliction of emotional distress exists only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

4. NEGLIGENCE — ACTIONS.

The elements of a negligence action are: 1) a duty or obligation recognized by the law; 2) a failure on the defendant's part to conform to the standard required; 3) a reasonably close causal connection between the conduct and the resulting injury; and 4) actual loss or damage resulting to the interests of another.

5. NEGLIGENCE — DUTY.

The threshold element in a negligence action is that there must exist a duty, or obligation, recognized by law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; unless a defendant owes a duty to a plaintiff, negligence analysis can proceed no further.

6. NEGLIGENCE — DUTY — QUESTION OF LAW.

The existence of a duty, in a negligence case, is ordinarily a question for the trial court to decide as a matter of law.

7. Governmental Immunity — Governmental Employees.

Lower level officials, employees, and agents are immune from tort liability only when they are: 1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority; 2) acting in good faith; and 3) performing discretionary, as opposed to ministerial, acts.

8. Governmental Immunity — Governmental Employees — Discretionary-Ministerial Dichotomy.

Whether the acts of a governmental employee were discretionary-decisional or ministerial-operational for purposes of governmental immunity is a question of law for the court.

9. Governmental Immunity — Governmental Employees — Discretionary-Ministerial Dichotomy.

For purposes of determining the applicability of governmental immunity to the acts of a governmental employee, if a particular activity involves personal deliberation, decision, and judgment, it is a discretionary act for which an employee will be immune from tort liability, but the execution or implementation of a decision is considered a ministerial act and will, if performed in a tortious manner, result in liability.

10. Malicious Prosecution — Torts.

A plaintiff, in order to sustain a charge of malicious prosecution, must prove that a criminal prosecution was instituted against him by a defendant which terminated in his favor, that defendant had no probable cause for the prosecution, and that defendant acted from malicious motives.

11. Malicious Prosecution — Police Officers.

The only situation in which an action for malicious prosecution would properly lie against a police officer is where the officer swears in a complaint to false facts without which there is no probable cause.

*Hunter, Luke & Martin, P.C.* (by *Paul L. Mastrangel*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Eric J. Eggan,* Assistant Attorney General, for defendant.

Before: Hood, P. J., and MacKenzie and R. M.
Pajtas,* JJ.

Per Curiam. Plaintiff appeals as of right from
an order dismissing his complaint against Donald
Arbic, a Michigan State Police trooper, pursuant
to MCR 2.116(C)(7) and (10). In a written opinion
filed on July 1, 1986, Livingston Circuit Judge
Stanley J. Latreille ruled that plaintiff's negli-
gence claim was barred by governmental immu-
nity and that no genuine issue as to any material
fact existed as to plaintiff's intentional tort claims
and defendant was therefore entitled to a judg-
ment of dismissal as a matter of law.

After reviewing the record and briefs in this
matter, we conclude that the excellent opinion
written by Judge Latreille should be adopted as
our opinion, and we do so by quoting it in its
entirety, updating some citations by footnote.

OPINION

I. *Introduction*

On December 29, 1983, a complaint was filed
against a number of defendants, including the
instant petitioner, Donald Arbic. The complaint
alleged a myriad of causes, but only those related
to defendant Arbic need be discussed here. There
were three counts related to this defendant: mali-
cious prosecution, negligent prosecution, and in-
tentional infliction of emotional distress.

The basic facts are not in dispute. Arbic, a
Michigan State Trooper, was called to the scene of
an alleged disturbance. Shortly before his arrival
at the scene of the original complaint, Arbic and a
fellow trooper encountered several youths, one of
whom was visibly injured, who claimed to have
been assaulted moments before. Proceeding with
the boys to the scene of the original complaint, the
officers met three men talking to another individ-

* Circuit judge, sitting on the Court of Appeals by assignment.

ual in a car. The car drove off and for the next hour or so the police officers conducted an investigation which caused the defendant Arbic to regard the three men as clear suspects in the assault on the boys. Subsequently, Arbic wrote a police report and submitted it to the Livingston County Prosecutor's Office. Based upon that report, as well as upon its own investigation, which included an independent interview with one of the assault victims and his family, the prosecutor's office authorized warrants against the three men. Two of those men later pled guilty.[1] While criminal proceedings were initiated against plaintiff herein, he was acquitted after the close of prosecution's proofs. Based upon these events, plaintiff filed his complaint.

Defendant Arbic now brings a motion for summary disposition based upon two lines of reasoning. He first argues that there is no genuine issue as to any material fact. Although defendant's motion never cites MCR 2.116(C)(10) and despite some confused mislabeling, it is clear from defendant's motion and supporting brief that his first argument is based upon that authority. This court will therefore treat the motion as properly labeled. See *Spectrum Manufacturing Corp v Bank of Lansing,* 118 Mich App 25; 324 NW2d 523 (1982) (incorrectly labeled motion is considered as if correctly labeled, absent prejudice to the other party). Secondly, defendant bases his motion upon MCR 2.116(C)(7), arguing that plaintiff's action is barred by immunity granted by law. As the following discussion will show, this court agrees with defendant's argument and therefore grants summary disposition as to all counts.

In two recent cases the Michigan Court of Appeals concisely iterated the current case law on summary disposition, both in situations where no genuine issue of material fact is the basis of the motion and where governmental immunity is the disputed matter.

---

[1] The other two men actually pled nolo contendere.

In *Anderson v Kemper Ins Co,* 128 Mich App 249, 252-253; 340 NW2d 87 (1983), the court said:

"Defendants' motions also claimed there was no genuine dispute as to any material fact. GCR 1963, 117.2(3) [now MCR 2.116(C)(10)]. Such a motion requires reference to any evidence in the case—depositions, affidavits, admissions, etc.—as well as the pleadings, to ascertain if there is any dispute as to any material fact [citation omitted]. The court should give the benefit of any reasonable doubt to the nonmoving party, being liberal in finding a genuine material issue [citation omitted]. The court must be satisfied that no factual development is possible which would support the nonmoving party's claim."

Further, in *Chivas v Koehler,* 124 Mich App 195, 198; 333 NW2d 509 (1983),[2] the Court of Appeals explained:

"A motion for summary judgment, GCR 1963, 117.2(1) [now MCR 2.116(C)(8)], is the proper way to raise the issue of governmental immunity in a tort action* [citation omitted]. Further, when governmental immunity forms the basis of the motion, the burden is upon the plaintiff to plead facts in avoidance of immunity.

---

* The exact court rule authority for this principle since adoption of the new 1985 court rules is MCR 2.116(C)(7). As pointed out in MCR 2.116(G)(5), "[t]he affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties, must be considered when the motion is based on subrule (C)(1)-(7) or (10)."

---

II. *Intentional Infliction of Emotional Distress*

Count IX of plaintiff's complaint alleges the intentional infliction of emotional distress by the defendant. As pointed out by defendant in his responsive brief, the current state of the law on this issue was enunciated in the 1976 case *Warren v June's Mobile Home Village & Sales, Inc,* 66 Mich App 386, 390-391; 239 NW2d 380 (1976),

2 Reversed and remanded on other grounds, 422 Mich 898 (1985).

quoting Restatement Torts, 2d § 46, comment d, p 73.

"It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' "

To date the Michigan courts have not seen fit to liberalize *Warren's* strict standard and it remains the law in this state. See *Holmes v Allstate Ins Co,* 119 Mich App 710; 326 NW2d 616 (1982).[3]

This court concludes that there can be no factual development inferrable from the record in this case to support a finding of intentional infliction of emotional distress. Nowhere in the record is there any factual allegation of "extreme and outrageous" behavior on defendant's part.

### III. *Negligent Prosecution*

As to the negligent prosecution count of plaintiff's complaint, defendant states that he could "find no cases supporting the existence of a cause of action for negligent prosecution." Plaintiff's responsive brief cites a good deal of general negligence law, none of which deals with "negligent prosecution." Although this court's decision is based primarily upon the immunity question, a brief analysis of the negligence question may be helpful. This court believes that even if plaintiff had avoided immunity he would have been left with an anemic negligence argument at best.

---

[3] Leave denied, 417 Mich 1018 (1983).

A. *Elements of Cause of Action*

As pointed out by Professor Prosser in his well-known treatise on torts, Prosser & Keeton, Torts (5th ed), § 30, pp 164-165:

"The traditional formula for the elements necessary to a [negligence] cause of action may be stated briefly as follows:

"1. A duty or obligation, recognized by the law . . . .

"2. A failure on [defendant's] part to conform to the standard required . . . .

"3. A reasonable close causal connection between the conduct and the resulting injury . . . .

"4. Actual loss or damage resulting to the interest of another." (Footnotes omitted.)

On two of these elements plaintiff's case seems weak.

First we have the matter of duty. As the Michigan courts have repeatedly stated:

"The threshold element in a negligence case is that there must exist a duty, or obligation, recognized by law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks. *Holloway v Martin Oil Service, Inc,* 79 Mich App 475; 262 NW2d 858 (1977). Unless defendant owes a duty to plaintiff, negligence analysis can proceed no further. *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977)." *Cook v Bennett,* 94 Mich App 93, 97-98; 288 NW2d 609 (1979).

The *Cook* case went on to point out that "[t]he existence of a duty is ordinarily a question for the trial court to decide as a matter of law." *Id.,* p 98.

Plaintiff's case is glaringly deficient on this point. This deficiency is characterized by defendant as a lack of case authority supporting a cause of action for negligent prosecution. More accurately, however, plaintiff has failed to show this court any authority for the proposition that defendant Arbic owed him a duty.

If there was a duty, what standard of care was to be used? It seems possible that, because the

complained-of acts were alleged failures to include certain exculpatory facts in the subject incident report, some legal expert testimony might be required. Only thus could a lay jury make a determination of whether or not the inclusion of those additional facts might have exonerated plaintiff in the opinion of the prosecutor.

The second weakness of plaintiff's claim is closely related to the first. Even if defendant *had* a legal duty to prepare his incident report in a certain way, that is, to include exculpatory facts as well as those indicative of plaintiff's guilt, a careful reading of the incident report suggests that he did not breach that duty. (A detailed analysis of that incident report is included in the discussion of governmental immunity.)

This court concludes that no cause of action for negligent prosecution exists in this case. In any event, defendant clearly prevails on the immunity issue.

B. *Governmental Immunity*

As clearly stated in *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 633-634; 363 NW2d 641 (1984):

"Lower level officials, employees, and agents are immune from tort liability only when they are:

"1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;

"2) acting in good faith; and

"3) performing discretionary, as opposed to ministerial acts." (Footnote omitted.)

The first of the three *Ross* elements is easily dispensed with. No one disputes the fact that Trooper Arbic was acting during the course of and within the scope of his employment. Thus the analysis quickly focuses on the remaining components of the *Ross* standard. Was the defendant acting in good faith and was he performing discretionary, rather than ministerial, activities.

While plaintiff clearly *argues* that Arbic lacked good faith, because, of course, such an allegation is

essential if he is to prevail, he provides the court with no factual support for the proposition. As stated much earlier in this opinion, when governmental immunity forms the basis of a summary disposition motion, the burden is upon plaintiff to plead facts in avoidance of immunity. See *Furness v Public Service Comm,* 100 Mich App 365; 299 NW2d 35 (1980). Plaintiff argues that he has pled a plethora of facts that, if believed, might lead to the conclusion that Trooper Arbic failed to include certain exculpatory items in his report. Plaintiff has also made a good deal of the fact that defendant Arbic and the plaintiff had a "heated" argument on the night of the incident. Those two assertions, in and of themselves, however, do not amount to a factual allegation of bad faith on Arbic's part. It is interesting to note that in his responsive brief defendant almost entirely avoids the issue of good faith and instead focuses on the third prong of *Ross,* the discretionary versus ministerial distinction, which brings us quite naturally to an analysis of that element.

Plaintiff argues that it is an issue of fact whether the defendant Arbic was engaged in a discretionary or a ministerial-operational task when preparing the incident report. This court disagrees. We must, of course, be mindful of the oft cited concurring opinion of Mr. Justice SOURIS in *Durant v Stahlin,* 375 Mich 628, 655; 135 NW2d 392 (1965), which iterated the following admonition against intemperate use of the summary disposition procedure by quoting *Doehler Metal Furniture Co v United States,* 149 F2d 130, 135 (CA 2, 1945):

"We take this occasion to suggest that trial judges should exercise great care in granting motions for summary judgment. A litigant has a right to a trial where there is the slightest doubt as to the facts, and a denial of that right is reviewable; but refusal to grant a summary judgment is not reviewable. Such a judgment, wisely used, is a praise-worthy time-saving device. But, although prompt dispatch of judicial business is a virtue, it

is neither the sole nor the primary purpose for which courts have been established. Denial of a trial on disputed facts is worse than delay. . . . The district courts would do well to note that time has often been lost by reversals of summary judgments improperly entered."

In the instant case, however, there is not the slightest doubt as to the facts.

On the issue of discretionary-decisional versus ministerial-operational we will simply accept all of the relevant facts pled by plaintiff as true. In fact, as regards this issue, defendant does not dispute those facts. The facts, quite simply put, are that defendant Arbic, on the day following the alleged assault, and after a second interview with the Nisbett boy, wrote a five-page, typewritten incident report. If we accept plaintiff's assertions as true, defendant included certain facts and excluded others. This incident report was then forwarded to the prosecutor's office and it is argued that a criminal prosecution was instigated because of its contents.

The specific issue the court is faced with at this juncture is whether the way defendant Arbic filled out the incident report was discretionary-decisional or ministerial-operational. This is clearly a question of law which should be decided by the court. As the Court of Appeals said in the recent case of *Tobias v Phelps,* 144 Mich App 272, 281-82; 375 NW2d 365 (1985),[4] "[w]e recognize that the distinction between discretionary and ministerial acts may pose great conceptual difficulties in cases in which the same defendant carried out his or her own discretionary determinations." Surely the Court could not have intended such conceptually difficult legal questions to be the province of a lay factfinder.

An accurate shorthand summation of the *Ross* discretionary-ministerial issue was contained in the recent case of *Rathbun v Starr Commonwealth*

---

[4] Leave denied, 424 Mich 859 (1985).

*for Boys,* 145 Mich App 303, 309; 377 NW2d 872 (1985).[5] There the Court said:

"In defining discretionary and ministerial acts, the Court transformed these words into the hyphenated 'discretionary-decisional' and 'ministerial-operational' form. *If a particular activity involves personal deliberation, decision, and judgment, it will be considered a discretionary act* for which an employee will be immune from tort liability. On the other hand, the execution or implementation of a decision is considered a ministerial act which, if performed in a tortious manner, will result in liability. [*Ross, supra*] 420 Mich 634-635." [Emphasis added.]

It is this court's determination that in filling out the incident report, based upon his investigation, and specifically in choosing which facts to include and which facts not to include, defendant Arbic was performing a discretionary-decisional activity.

If the gravamen of plaintiff's allegation were slightly different the result might have been otherwise. For instance, if it was alleged that the trooper, *in the act* of typing in the plaintiff's name had gotten the wrong Mr. King or had alternatively put down the address for plaintiff and had thereby caused prosecution of the wrong person, that would constitute a ministerial act. This court, however, is of the opinion that the activity of writing the incident report was an activity which involved "personal deliberation, decision and judgment." Were this court to rule otherwise, then every time a policeman was engaged, in good faith, in the act of completing a written report of his investigation he or she would be unnecessarily hampered by considerations of his/her own potential liability.

Because all of the *Ross* elements are present defendant is clearly entitled to governmental immunity on the nonintentional negligent prosecution charge. That leaves only an examination of the arguably "intentional" tort of malicious prosecution.

---

5 Leave denied, 424 Mich 908 (1986).

IV. *Malicious Prosecution*

A. *Governmental Immunity*

It must first be pointed out that this court could find no specific authority for the proposition that governmental immunity, as recently outlined by the *Ross* decision, may be applied to actions for malicious prosecution against police officers. There has, however, been a recent extension of governmental immunity to certain situations where intentional torts are alleged. Thus in *Butler v City of Detroit,* 149 Mich App 708, 715; 386 NW2d 645 (1986),[6] the Court said, "it is recognized that actions by police officers which might normally constitute intentional torts are protected by governmental immunity if those actions are justified." Therefore there is authority for an extension of governmental immunity to areas other than negligence.

While this court might be disposed to extend the doctrine thus, because there is no clear authority to do so, the remainder of this decision will outline a more traditional analysis of malicious prosecution. The result of each line of reasoning is the same and therefore the two determinations merely serve to bolster one another.

B. *Analysis of Elements*

We necessarily begin this final portion of our analysis by recognizing the disfavored status of this cause of action. The Michigan Supreme Court in the case of *Renda v International Union, UAW,* 366 Mich 58, 74; 114 NW2d 343 (1962), noted:

"In *Rogers v Olds,* 117 Mich 368, 371 [75 NW 933 (1898)], we stated that the action for malicious prosecution 'is strictly guarded' and 'is never encouraged *except in plain cases.'* [Emphasis added.] This caution was again repeated in *Roblyer v Hoyt,* 343 Mich 431, 435 [72 NW2d 126 (1955)], when we held:

" 'Actions for malicious prosecution are regarded by law with jealousy and they ought not to be favored but managed with great caution.' "

---

6 Leave denied, 426 Mich 867 (1986).

At the same time, however, it is important to note that the Michigan courts, in developing this particular cause of action, have given great attention to the compelling and competing social interests involved. In *Belt v Ritter,* 385 Mich 402, 406; 189 NW2d 221 (1971), the Court noted:

"The First Restatement of Torts has accurately defined those interests:

" 'The restrictions which the rules stated in this Topic imposed upon a recovery for the wrongful prosecution of criminal proceedings represent an adjustment between two highly important social interests. The first is the interest of society in the efficient enforcement of the criminal law, which requires that private persons who aid in the enforcement of the law should be given an effective protection against the prejudice which is likely to arise from the termination of the prosecution in favor of the accused. The second is the interest which the individual citizen has in being protected against unjustifiable and oppressive litigation of criminal charges, which not only involve pecuniary loss but also distress and loss of reputation.' "

Thus, while remaining cognizant of the action's disfavored status, this court is also aware that it represents, in the appropriate case, plaintiff's only avenue of redress for the particular wrong alleged. Finally, therefore, we come to our analysis of plaintiff's claim in the instant case.

"In order to sustain the charge of malicious prosecution, a plaintiff must prove that a criminal prosecution was instituted against him [by the defendant] which was terminated in his favor, that defendant had no probable cause for the prosecution, and that defendant acted from malicious motives."[7] *Belt v Ritter,* 18 Mich App 495, 502-503; 171 NW2d 581 (1969).

In the instant case it is undisputed that the criminal prosecution against plaintiff was dismissed before trial. Thus the prosecution "terminated in his favor." The remaining elements, however, are eloquently disputed by the parties.

---

[7] See Prosser, Torts (4th ed), § 119, p 385.

It appears to this court, after a great deal of thought and study has been given to the matter, that the answer herein lies in the resolution of a very focused issue. Defendant had invoked a traditional defense to malicious prosecution, namely, the defense of advice of counsel.

In cases similar to the one we are faced with here, that legal principle reduces to the following rule: " . . . the only situation in which an action for malicious prosecution would properly lie is where a police officer knowingly swears to false facts in a complaint, without which there is no probable cause." *Belt v Ritter,* 18 Mich App 503. The argument supported by that rule is sometimes characterized as an attack on the first element of the cause of action, that defendant *instituted* the previous prosecution. Alternatively, there is a good deal of case literature which views the defense as an attack on the "lack of probable cause" prong. This Court is in agreement with the Court of Appeals decision in *Wilson v Yono,* 65 Mich App 441, 444 [237 NW2d 494] (1975), which said, "[a]lthough the cases seem to talk in terms of probable cause, it is clear that the rule is based upon the idea that defendant has not in fact *instituted* the prosecution." (Emphasis added.) See also *Rivers v Ex-Cell-O Corp,* 100 Mich App 824, 832-833; 300 NW2d 420 (1980).

In the final analysis then, we are brought back, quite conveniently, to a question which has already been addressed in this opinion, albeit in slightly different form. The question is this: Is there any evidence in the record, as it exists, which would give rise to the inference that defendant Arbic knowingly included false facts in his incident report, without which the prosecutor could not have concluded there was probable cause? The answer is clearly no. This question is a slightly different form of the one answered earlier regarding defendant's lack of good faith. It has never been pled or argued by plaintiff that defendant did anything worse than fail to include certain arguably exculpatory items. In fact, those

items which plaintiff has consistently labeled as "exculpatory" (i.e. that it was dark, that the victim only saw part of his assailant's legs, etc.), are not really exculpatory in nature. An exculpatory fact would be something such as an eye witness who saw plaintiff elsewhere or the fact that plaintiff had a broken ankle on the night in question. See *e.g., Rivers, supra,* pp 832-833. While the distinction is concededly a fine one, plaintiff is really arguing certain ameliorating circumstances, not exculpatory facts. This court has determined that it would place too much of a burden upon investigating police officers to require that they include all possibly mitigating items in their police reports in order to avoid potential liability.

The question simply put is, did Officer Arbic fill out a fair incident report? The answer is yes. Earlier the Court had difficulty in locating indicia of a lack of good faith to avoid immunity. Similarly, there has been no adequate showing of knowing bias in defendant's reporting which would give rise to a legitimate cause of action for malicious prosecution.

#### CONCLUSION

Summary disposition is granted to defendant upon all remaining counts. Defendant shall prepare an order in conformity with this opinion and submit it in accordance with MCR 2.602(B).

Affirmed.