# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH BAILEY,

      Plaintiff-Appellant,

v

CHRISTOPHER FITZPATRICK, WILLIAM
STANFORD, and MICHAEL DORTCH,

      Defendants-Appellees.

UNPUBLISHED
January 10, 2017

No. 329516
Washtenaw Circuit Court
LC No. 15-000370-CZ

Before: WILDER, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

Two masked men robbed an Ann Arbor party store. One of the assailants wore a distinctive sweatshirt with a hood that closed into a skeleton mask. An anonymous tipster implicated plaintiff Joseph Bailey. Bailey was arrested, charged, and bound over for trial following a preliminary examination. He eventually pleaded guilty to resisting and obstructing a police officer, and the prosecutor dismissed armed robbery and weapons possession charges. Bailey then filed a complaint against defendants, three police detectives, alleging false arrest, malicious prosecution, assault and battery, and "gross negligence." The circuit court summarily dismissed all of Bailey's claims.

We affirm the circuit court's dismissal of the causes of action, save one. Because questions of fact remain regarding whether defendant Stanford threatened Bailey and deliberately spat in Bailey's face during an interrogation, we reverse the circuit court as to that narrow ground and remand for further proceedings.

I

On the morning after the robbery, Ann Arbor detective Christopher Fitzpatrick reviewed video footage of the crime. According to Fitzpatrick, the images showed that one of the assailants wore "a skeleton mask" hoodie with a "skeleton pattern" visible on the arms and the lower torso. That robber also wore a dark colored, sleeveless vest with letters or a brand name on the upper left chest and dark colored blue jeans with a pattern on the right thigh. After receiving a tip that Bailey was involved in the robbery, defendants Fitzpatrick and Stanford visited Bailey's home. Bailey's mother allowed the detectives to "check" his room to verify that Bailey was not present. The detectives observed a "skeleton hoodie" hanging from the door.

-1-

Stanford then applied for a search warrant, averring that one of the robbers had worn "a skeleton sweat shirt," "blue jeans with a symbol on the upper right thigh," and "a sleeveless jacket over the skeleton sweat shirt with a symbol on the upper front left side." The affidavit recited that a tip from an unknown caller identified Bailey as the robber, and that detectives had seen a "skeleton sweat shirt" in Bailey's room. A magistrate approved the warrant. The police seized several items of Bailey's clothing including the sweatshirt, a winter vest with the word "Avirex" on the left chest area, and a pair of jeans "that had a very distinct pattern on both front left and right thigh areas[.]" Bailey allegedly resisted his subsequent arrest by fleeing through a window and hiding in a wooded area. He was charged with assaulting, resisting, or obstructing an officer in addition to armed robbery and the weapons offense.

A Washtenaw District Court judge conducted a preliminary examination at which detectives Fitzpatrick and Stanford testified, as well as an officer who had been dispatched to the robbery scene. The district court judge determined that probable cause existed to believe that Bailey had committed all three offenses. Bailey was unable to furnish bond and was remanded to the Washtenaw County Jail.

Approximately five months later, Bailey entered his plea to the resisting and obstructing charge. The prosecutor successfully moved for *nolle prosequi* as to the armed robbery and weapons charges. Bailey first pursued a federal court action brought under 42 USC § 1983. When the federal district court declined to exercise supplemental jurisdiction over his state law claims, he filed this case.

Bailey's 110-paragraph complaint sets forth four counts: (1) "assault and battery," (2) "gross negligence," (3) "false arrest/false imprisonment," and (4) "malicious prosecution." Defendants sought summary disposition pursuant to MCR 2.116(C)(7) and (8), which the circuit court granted.

II

We review de novo a circuit court's summary disposition ruling. *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008). Under MCR 2.116(C)(7), a defendant is entitled to summary disposition when a claim is barred because of immunity granted by law. *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). We accept the plaintiff's well-pleaded factual allegations as true and construe them in the plaintiff's favor, unless the moving party contradicts the allegations with documentary evidence. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999), citing *Patterson v Kleiman*, 447 Mich 429, 434 n 6; 526 NW2d 879 (1994). While "a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material," a party "may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence," if "the substance or content of the supporting proofs [is] admissible in evidence." *Maiden*, 461 Mich at 119.

A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based solely on the pleadings. *Id.* "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Id.* Here, however, the circuit court considered

evidence outside the pleadings: the preliminary examination transcript and the search warrant affidavit. Accordingly, MCR 2.116(C)(10) governs our analysis, rather than MCR 2116(C)(8).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). A (C)(10) motion should be granted if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, reveal no genuine issue with respect to any material fact. *Id*.; see also MCR 2.116(G)(3), (4). A genuine issue of material fact exists when the record, "giving the benefit of reasonable doubt to the opposing party, . . . leave[s] open an issue upon which reasonable minds might differ." *Skinner*, 445 Mich at 162 (quotation marks and citation omitted). When considering a motion for summary disposition under MCR 2.116(C)(10), the court is not permitted to assess credibility or to determine facts. Id. at 161.

III

A. MALICIOUS PROSECUTION

"A person's interest in freedom from unjustifiable litigation is protected in part by the tort of malicious prosecution." *Belt v Ritter*, 385 Mich 402, 405-406; 189 NW2d 221 (1971). The elements of the tort are: (1) the defendant initiated a criminal prosecution against the plaintiff, (2) the criminal proceedings terminated in the plaintiff's favor, (3) the person "who instituted or maintained the prosecution lacked probable cause for his actions," and (4) "the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Matthews v Blue Cross & Blue Shield of Mich*, 456 Mich 365, 378; 572 NW2d 603 (1998); see also *Walsh v Taylor*, 263 Mich App 618, 632-633; 689 NW2d 506 (2004). The dispute in this case centers on whether defendants had probable cause to arrest Bailey. When no material facts are in dispute, we review this question de novo. *Matthews*, 456 Mich at 377.

This Court has repeatedly held that "where a person fully and fairly states the facts known to him to a prosecuting attorney, and signs the complaint on his advice, probable cause will be considered established so as to prevent a judgment for malicious prosecution against that person." *Belt v Ritter*, 18 Mich App 495, 503; 171 NW2d 581 (1969). One potential situation giving rise to a malicious prosecution action "is where a police officer knowingly swears to false facts in a complaint, without which there is no probable cause." *Id*. The facts supporting probable cause in this case included the tip implicating Bailey, the similarities between his clothing and the clothing seen on the store video, and his flight when the officers attempted to arrest him.

Bailey argues that defendants' summary disposition motion was "premature," and that the parties should have been permitted to engage in discovery. While we are sympathetic to this claim, Bailey has failed to offer any argument that could potentially rebut the existence of probable cause, even if factually supported. Bailey's brief on appeal contends that the officer's initial "search" of his bedroom was illegal, that he had an alibi the officers failed to verify, and that defendants failed to conduct a line-up "for the victim of the party store to identify Plaintiff." These allegations do not create a fact question regarding probable cause.

Aside from a bare-bones accusation that detectives Stanford and Fitzpatrick illegally searched his bedroom, Bailey proffers no facts or argument in this regard. Fitzpatrick testified at the preliminary examination that Bailey's mother allowed the officers to look in Bailey's bedroom to confirm that Bailey was not at home, and that the officers saw the sweatshirt in plain view hanging from the door to the room. We are unable to discern even a hint of illegality, and Bailey has not explained how even an illegal search could eliminate probable cause in this civil action. Nor do we find any merit in Bailey's contention that a line-up should have been performed as both robbers wore masks covering their faces and no facial characteristics could be discerned. And the preliminary examination transcript reflects that Fitzgerald testified in detail to his post-arrest interview with Bailey, including that Bailey claimed to have no "account of his whereabouts" for the night of the robbery. Bailey has offered no evidence that this statement was untrue. Given that defendants made a full and fair disclosure of the results of their investigation to the prosecutor, *Payton v Detroit*, 211 Mich App 375, 395; 536 NW2d 233 (1995), Bailey's malicious prosecution claim fails.

## B. FALSE ARREST/FALSE IMPRISONMENT

"A false arrest is an illegal or unjustified arrest, and the guilt or innocence of the person arrested is irrelevant." *Peterson Novelties, Inc v Berkley*, 259 Mich App 1, 18; 672 NW2d 351 (2003). "False imprisonment has been defined by this Court as an unlawful restraint on a person's liberty or freedom of movement." *Id*. at 17-18. "To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause." *Id*. at 18.

As discussed above, the district court's decision at the preliminary examination established that there was probable cause for Bailey's arrest as a matter of law, and Bailey provides no argument to the contrary. Because Bailey cannot "show that the arrest was not legal, i.e., the arrest was not based on probable cause," he cannot "prevail on a claim of false arrest or false imprisonment." *Id*. Accordingly, defendants were entitled to summary disposition on these claims.[1]

## C. GROSS NEGLIGENCE

In order to proceed with a gross negligence claim, the plaintiff must raise a material question whether "the conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Maiden*, 461 Mich at 129. Additionally, a plaintiff must plead facts

---

[1] Notably, plaintiff never explains how he can have a valid false imprisonment claim when (by his own admission) his arrest and confinement for assaulting, resisting, or obstructing an officer were justified. Additionally, he never presented any substantive argument concerning the false imprisonment claim below. Moreover, as with the last issue, plaintiff identifies the standards that must be met for these claims, then provides a list of facts from his complaint, and finally states in conclusory fashion that there was "absolutely no lawful basis to arrest and imprison" plaintiff and thus "the decision of the trial court must be reversed." Any analysis was again lacking.

that amount to gross negligence and not actions that also constitute intentional torts. *Sudul v Hamtramck*, 221 Mich App 455, 458; 562 NW2d 478 (1997) ("We specifically agree with the discussion in the dissent/concurrence regarding the nonexistence of a tort called 'assault and battery by gross negligence.' We especially also hold that an individual employee's intentional torts are not shielded by our governmental immunity statute, a proposition that too frequently is mired in confusion.").[2]

Here, Bailey pleaded no facts amounting to gross negligence separate and apart from his allegation of intentional torts.[3] The circuit court properly granted summary disposition of this claim.

## D. ASSAULT AND BATTERY

"An assault is . . . any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v Thomas*, 189 Mich App 110, 119; 472 NW2d 16 (1991). In *Odom v Wayne Co*, 482 Mich 459, 471-472; 760 NW2d 217 (2008), our Supreme Court held that MCL 691.1407(2) did not abrogate the common-law immunity that government employees enjoy for intentional torts. Individual "lower ranking" government employees such as defendants are entitled to qualified immunity from tort liability if they meet all the following conditions:

---

[2] In *Bletz v Gribble*, 641 F3d 743, 756 (CA 6, 2011), the Sixth Circuit interpreted Michigan law in this regard as follows:

> Although establishing that a governmental official's conduct amounted to "gross negligence" is a prerequisite to avoiding that official's statutory governmental immunity, it is not an independent cause of action. The only cause of action available to plaintiff for allegations of this nature would be for assault and battery. *See, e.g.*, *Van Vorous v Burmeister*, 262 Mich App 467, 483; 687; NW2d 132 (2004)[, overruled on other grounds by *Odom v Wayne Co*, 482 Mich 459, 473 n 33; 760 NW2d 217 (2008)] ("Thus, plaintiff's claim of gross negligence is fully premised on her claim of excessive force. As defendants correctly note, this Court has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence. Thus, plaintiff did not state a claim on which relief could be granted.") (citations omitted); see also *Livermore [ex rel Rohm v Lubelan*, 476 F 3d 397, 408 (CA 6, 2007)] (rejecting a gross-negligence claim against an officer-defendant because it was "undoubtedly premised on the intentional tort of battery" where it was based on a shooting that resulted in death).

[3] In his brief on appeal, Bailey does not specifically identify the acts (or inactions) that he believes were grossly negligent.

(1) the acts were taken during the course of employment and the employees were acting, or reasonably believed that they were acting, within the scope of their authority, (2) the acts were taken in good faith, and (3) the acts were discretionary-decisional, as opposed to ministerial-operational. [*Id*. at 468.]

Our Supreme Court "has described a lack of good faith as 'malicious intent, capricious action, or corrupt conduct' or 'willful and corrupt misconduct.'" *Id*. at 475, quoting *Veldman v Grand Rapids*, 275 Mich 100, 113; 265 NW 790 (1936), and *Amperse v Winslow*, 75 Mich 234, 245; 42 NW 823 (1889). Unlike ministerial acts, discretionary acts require personal deliberation, decision, and judgment. *Odom*, 482 Mich at 475-476.

Bailey alleges that defendant Stanford threatened him during an interrogation and deliberately and intentionally spit in his face at least twice. Specifically, Bailey alleged in his complaint that:

66. During the May 25, 2012, interrogation, Defendant Stanford threatened and scared Plaintiff by saying words to the effect of, "Don't tell me what to fucking do" and "You're in my house now, I can kick your ass."

67. During the May 25, 2012, interrogation of Plaintiff by Defendants Fitzpatrick and Stanford at the Ann Arbor Police Department, Defendant Stanford, who was less than one foot away from Plaintiff's face, deliberately and intentionally spit in Plaintiff's face on at least two occasions and also made threatening statements.

Whether Stanford's threats amount to an assault presents a question of fact that must be resolved by a jury. Stanford's threat that he could "kick [Bailey's] ass" because Bailey was in the police station suffices to permit an inference that Bailey reasonably apprehended imminent contact. Similarly, a jury will have to determine whether Stanford actually spat in Bailey's face or, as defendants contend, saliva from Stanford's mouth contacted Bailey. See *People v Terry*, 217 Mich App 660, 663; 553 NW2d 23 (1996) ("spitting upon a person is a battery"). The presence of fact questions regarding whether the events occurred and Stanford's intent render summary dismissal inappropriate. *Dextrom*, 287 Mich App at 429.

We affirm the circuit court's order granting defendants' motion for summary disposition and dismissing plaintiff's complaint against defendants, except with regard to plaintiff's assault and battery claims against defendant Stanford, which we reverse. We remand for reinstatement of plaintiff's assault and battery claims against defendant Stanford. We do not retain jurisdiction.

/s/ Kurtis T. Wilder
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher