## PAYTON v CITY OF DETROIT

Docket Nos. 148260, 148435. Submitted October 4, 1994, at Detroit. Decided June 6, 1995, at 9:10 A.M. Leave to appeal sought.

David J. Payton brought an action in the Wayne Circuit Court against the City of Detroit and others, alleging tort claims of false arrest, false imprisonment, and malicious prosecution, a claim under 42 USC 1983 for alleged violations of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, and a claim under 42 USC 1985(3) for an alleged conspiracy to interfere with the plaintiff's civil rights. The action followed the dismissal of four murder charges against the plaintiff and the plaintiff's acquittal with regard to a charge alleging armed robbery and charges of sexual assault. The jury returned verdicts for the defendants with regard to the claims of false arrest, false imprisonment, and violation of § 1983 and for the plaintiff with regard to the claim of malicious prosecution. It also found that all the defendants had conspired against·the plaintiff in violation of § 1985(3). The court, Louis F. Simmons, Jr., J., entered a judgment for the plaintiff against the City of Detroit with regard to the charges of malicious prosecution and conspiracy to violate the plaintiff's civil rights under §§ 1983 and 1985, and against the individual defendants, Detroit Police Chief William Hart, Deputy Police Chief Gerald Hale, and Lieutenant Richard Ridling, for the same offenses. The court, Michael J. Callahan, J., then granted the plaintiff's motion for an award of costs and attorney fees. The defendants appealed from the judgment and the plaintiff cross appealed, arguing that he is entitled to a new trial if the Court of Appeals finds any of the defendants' arguments meritorious. (Docket No. 148260). The defendants also appealed from the order regarding attorney fees. (Docket No. 148435).

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Civil Rights §§ 16-18, 20, 20.5, 25; Malicious Prosecution § 68; Municipal, County, School, and State Tort Liability §§ 88, 179, 428, 429.

See ALR Index under Civil Rights and Discrimination; Malicious Prosecution; Municipal Corporations; Police and Law Enforcement Officers.

1. The governmental immunity act, MCL 691.1407(1); MSA 3.996(107)(1), provides immunity from prosecution to the city because the general nature of the activity in this case related to the operation of its police force—a function that clearly is governmental in nature. A city cannot be held vicariously liable for torts of its police officers committed during the course of an arrest because the officers are engaged in police activity, which is a governmental function entitled to immunity. Even if the officers were not engaged in the exercise of a governmental function within the scope of their employment, the city is entitled to immunity because it cannot be held liable for the intentional torts of its employees.

2. The statute regarding malicious prosecution, MCL 600.2907; MSA 27A.1907, does not authorize malicious prosecution actions against municipalities in abrogation of the doctrine of governmental immunity. The judgment against the city for malicious prosecution must be reversed and the matter must be remanded to the trial court for entry of a judgment for the city.

3. Police Chief Hart is entitled to immunity from tort liability when acting in his executive authority. The trial court erred in denying his motion for summary disposition regarding the tort claims of false arrest, false imprisonment, and malicious prosecution. The judgment against Chief Hart regarding the claim of malicious prosecution must be reversed and the matter must be remanded to the trial court for entry of a judgment for Chief Hart.

4. The trial court erred in denying the motion for a directed verdict by defendants Hale and Ridling regarding the claim of malicious prosecution. The plaintiff did not state a prima facie case of malicious prosecution. There was probable cause for the proceedings against the plaintiff. The defendants' full and fair disclosure to the prosecutor's office of all the material facts within their possession prevents them from being subject to an action for malicious prosecution. The judgment against Hale and Ridling regarding the claim of malicious prosecution must be reversed and the matter must be remanded to the trial court for entry of a judgment for them.

5. The trial court erred in failing to direct a verdict for the defendants regarding the claim of conspiracy under 42 USC 1985(3). The plaintiff failed to establish a claim under § 1985(3) because he failed to present evidence that the defendants acted pursuant to racial or class-based discrimination in pursuing the charges against him. The judgment for the plaintiff regarding the claim under § 1985(3) must be reversed and the matter must be remanded to the trial court for entry of a judgment for the defendants.

6. The judgment regarding the claims under 42 USC 1983

must be set aside because it is self-contradictory. The matter must be remanded to the trial court.

7. The trial court abused its discretion in failing to direct a verdict for the city regarding the claim under § 1983 for failure to train its police force adequately because the plaintiff failed to prove that the city had a custom or policy that violated the constitution or laws of the United States. The plaintiff failed to prove that the lack of training caused the alleged constitutional torts because he failed to prove that the officers were not trained adequately. The judgment against the city regarding § 1983 must be reversed and the matter must be remanded to the trial court for entry of a judgment for the city.

8. A supervisory official's liability under § 1983 cannot be based solely on the theory of respondeat superior. The evidence is insufficient to support a finding that Hart authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct of Hale, Ridling, and the other police officers in the special squad that investigated the murders. The judgment against Hart under § 1983 must be reversed and the matter must be remanded to the trial court for entry of a judgment for Hart.

9. A prosecution without probable cause is not actionable under § 1983 as a violation of substantive due process rights under the Fourteenth Amendment. To prevail under § 1983, a plaintiff who is improperly prosecuted and arrested must show some independent violation of a right protected by the constitution or federal law. Here, the evidence was not sufficient to make such a showing against Hale and Ridling. Therefore, the claim under § 1983 based on malicious prosecution and the claim regarding a conspiracy to further the malicious prosecution against Hale and Ridling will not lie. The judgment against Hale and Ridling regarding the claim under § 1983 based on malicious prosecution must be reversed and the matter must be remanded to the trial court for entry of a judgment for those defendants.

10. The jury's contradictory verdict makes it impossible to discern its findings regarding the alleged civil rights violations committed by Ridling with regard to the plaintiff's arrest, detention, and interrogation. The matter must be remanded for a retrial with regard to defendant Ridling.

11. The trial court's order awarding plaintiff attorney fees pursuant to 42 USC 1988 must be vacated.

Docket No. 148260 reversed and remanded; Docket No. 148435 vacated.

1. TORTS — GOVERNMENTAL IMMUNITY.

A city and its officials are entitled to immunity from tort liability
for activities related to the operation of its police force; a city is
not vicariously liable for the torts of its police officers commit-
ted during the course of an arrest because the officers are
engaged in police activity, which is a governmental function
entitled to immunity; a city is not liable for the intentional
torts of its employees (MCL 691.1407; MSA 3.996[107]).

2. ACTIONS — MALICIOUS PROSECUTION — GOVERNMENTAL IMMUNITY.

The malicious prosecution statute does not authorize an action
for malicious prosecution against a municipality in abrogation
of the doctrine of governmental immunity (MCL 600.2907,
691.1407; MSA 27A.2907, 3.996[107]).

3. MALICIOUS PROSECUTION — POLICE OFFICERS.

The only situation in which an action for malicious prosecution
properly lies against a police officer is where the officer swears
to false facts in a complaint without which there is no probable
cause; the officer's failure to include all exculpatory facts is not
adequate to sustain a suit for malicious prosecution.

4. CIVIL RIGHTS — CONSPIRACY.

A plaintiff asserting a claim under 42 USC 1985(3) must prove
the existence of some racial, or perhaps otherwise class-based,
invidiously discriminatory animus behind the conspirators' ac-
tion.

5. CIVIL RIGHTS — ACTIONS — DEFENSES — GOVERNMENTAL IMMU-
NITY.

Any cause of action brought in a state court under 42 USC 1983
requires the court to review the federal law interpreting the
statute; the determination of the immunity to be accorded as a
defense in an action under § 1983 is entirely a question of
federal law; immunities and defenses provided by the state are
irrelevant in a litigation under § 1983, even where the action is
brought in a state court.

6. CIVIL RIGHTS — MUNICIPAL CORPORATIONS.

42 USC 1983 provides a federal remedy against any person who,
under color of state law or custom having the force of law,
deprives another of rights protected by the constitution or laws
of the United States; a municipality may be held liable under
§ 1983 for its policies that violate the constitution or laws of
the United States; no respondeat superior liability is permitted
and a municipality cannot be held liable under § 1983 solely
because it employs a tortfeasor.

7. CIVIL RIGHTS — MUNICIPAL CORPORATIONS — NEGLIGENCE.

Negligence is not a sufficient basis for imposing liability on a municipality under 42 USC 1983; the deliberate indifference of the municipality is required.

8. CIVIL RIGHTS — MUNICIPAL CORPORATIONS — ACTIONS.

A plaintiff seeking to maintain a cause of action against a municipality under 42 USC 1983 must show that an action pursuant to official municipal policy of some nature caused a constitutional tort; although a policy generally involves formal approval from official decision-making channels, the plaintiff may assert and prove that the policy-making officials of the municipality deliberately approved an unconstitutional custom or practice; a policy or custom may be inferred from acts or omissions of a municipality's supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitutional rights of the plaintiff; negligence is not a sufficient basis for imposing liability upon a municipality under § 1983.

9. CIVIL RIGHTS — MUNICIPAL CORPORATIONS.

A municipality may be found liable for a constitutional violation under 42 USC 1983 only where its policies are the moving force behind the violation.

10. CIVIL RIGHTS — MUNICIPAL CORPORATIONS — RESPONDEAT SUPERIOR.

Liability of a supervisory official of a municipal corporation under 42 USC 1983 cannot be based solely on the theory of respondeat superior; liability under § 1983 must be based on more than the official's right to control employees.

11. CIVIL RIGHTS — MALICIOUS PROSECUTION — ACTIONS.

A plaintiff who has been prosecuted improperly must show some independent violation of a right protected by the constitution or federal law in order to prevail in an action under 42 USC 1983; a prosecution without probable cause is not actionable under § 1983 as a violation of substantive due process rights under the Fourteenth Amendment.

*Sachs, Waldman, O'Hare, Helveston, Hodges & Barnes, P.C.* (by *Barry P. Waldman, Denise L. Mitcham,* and *Barbara M. Robinson*) (*Bendure & Thomas,* by *Mark R. Bendure* and *Sidney A. Klingler,* of Counsel), for the plaintiff.

*Phyllis James,* Corporation Counsel, and *Joanne D. Stafford,* Supervising Assistant Corporation Counsel, for the defendants.

Before: HOOD, P.J., and TAYLOR and D. A. SERVITTO,* JJ.

TAYLOR, J. In Docket No. 148260, defendants appeal as of right the trial court's judgment. Plaintiff cross appeals as of right, arguing that he is entitled to a new trial if this Court finds any of defendants' arguments meritorious. In Docket No. 148435, defendants appeal the trial court's order awarding plaintiff attorney fees pursuant to 42 USC 1988.

### DOCKET NO. 148260

On February 9, 1992, plaintiff filed suit against the City of Detroit and several of its employees, including Police Chief William Hart, Executive Deputy Police Chief James Bannon, Deputy Police Chief Gerald Hale, and Lieutenant Richard Ridling. Plaintiff's complaint also named Wayne County Prosecutor William Cahalan and various other prosecutors, the City of Highland Park, and several Highland Park employees but, for various reasons, they are no longer involved in the case.[1]

The complaint alleged tort claims of false arrest, false imprisonment, and malicious prosecution, a claim under 42 USC 1983 for alleged violations of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitu-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The claims against the Wayne County Prosecutor and the other named prosecutors were dismissed after this Court held that the prosecutors were absolutely immune from liability. See *Payton v Wayne Co,* 137 Mich App 361; 357 NW2d 700 (1984). Plaintiff's claims against the City of Highland Park and its employees were settled, and the claims against Chief Bannon were dismissed.

tion, and a claim under 42 USC 1985(3) for an alleged conspiracy to interfere with plaintiff's civil rights. A thorough discussion of the underlying facts of this case will assist in resolving the issues raised on appeal.

## FACTS

In Detroit in the late 1970s through 1980, there were approximately thirty-four murders of women who were believed to be prostitutes. These murders were investigated by Squad 7, a Detroit police unit formed in 1974 responsible for investigating major felony-murder cases. Squad 7 consisted of ten to twelve experienced police detectives and a prosecutor from Wayne County who was available at all times. Richard Ridling was the head of Squad 7, and Deputy Chief Hale of the Criminal Investigation Bureau was the individual to whom the squad reported. Hale, in turn, reported directly to Chief Hart. Hart met with Hale almost daily, but delegated job authority to Hale, although he could intervene if needed. A five-member civilian Board of Police Commissioners formulated and made the policies of the Detroit Police Department. By late 1980, nineteen of the thirty-four murder cases remained open and the members of Squad 7 believed that these remaining murders were most likely perpetrated by one individual.

On November 5, 1980, while conducting surveillance in Highland Park, Detroit police officers encountered Anita Staples, a prostitute who indicated that she had been forced to perform oral sex on a man who had threatened to beat her with a tire iron. On the basis of Staples' physical description of the man and the car he was driving, Highland Park and Detroit police officers arrested plaintiff at his mother's home and brought him to

the Highland Park Police Department. No warrant had been issued for his arrest.

Plaintiff was held by the Highland Park police for more than thirty hours. *Payton v Wayne Co,* 137 Mich App 361, 364; 357 NW2d 700 (1984). After being taken into custody at about 2:15 A.M., plaintiff was placed in the lockup cell. Plaintiff signed a constitutional rights certificate of notification on November 5, 1980, at 10:27 A.M., acknowledging that he had been advised of his rights, and indicated he did not want an attorney. Later that day, he was questioned by both the Highland Park police and the Detroit police with regard to whether he had raped Staples and committed a number of homicides. Plaintiff denied committing any of the crimes. Plaintiff claims that, during this time, the officers deprived him of his contact lenses and glasses, causing him to suffer severe headaches and sleeplessness. He also asserts that the interrogating officers told him he could not have an attorney until they charged him with a crime.

Because the Highland Park police were unsuccessful in their efforts to contact Ms. Staples, they ended their investigation of plaintiff. On November 6th, Highland Park police turned plaintiff over to the Detroit Police Department for an investigation into the prostitute murders. Without first obtaining an arrest warrant, Detroit police officers transported plaintiff to the Detroit Police Department, where he was questioned again for more than fifty-six hours. *Id.* The decision to arrest and transfer plaintiff to Detroit was made by Ridling on the basis of surveillance notes and a complaint against plaintiff alleging felony sex crimes filed by Pamela Favors.

While in custody in Detroit on November 6,

1980, plaintiff initialed another constitutional rights certificate of notification at 11:05 A.M. He was then interrogated by Squad 7 Officers Richard Newcomb, Richard Davies, and Ridling. Plaintiff claims that the officers tried to convince him that if they proved he didn't commit the murders, he wouldn't be prosecuted for rape. At this point, plaintiff had been under arrest for two days and complained of having headaches and vomiting.

The following morning, Friday, November 7, 1980, Favors identified plaintiff in a lineup. She identified plaintiff as the person who had assaulted her with a knife and threatened to kill her after she had performed oral sex on him on October 28, 1980. Her complaint was joined with that of another prostitute, Renee Cobb, who alleged plaintiff committed a similar assault in July, 1980. Around 3:30 P.M., after the lineup, plaintiff was taken before Judge Michael Talbot to obtain a reverse writ.[2] Plaintiff was represented by an attorney. The court was informed by the officer accompanying plaintiff that plaintiff had been arrested the previous day on a murder charge and that there were more complaints involving charges of sex crimes. Judge Talbot informed plaintiff that he had the right to an attorney, and further instructed:

> My advice to you is, make no statement until you talk to a lawyer and if you wish to make a statement you know you have the right to a lawyer. If you start talking and decide to stop you have the right to stop. You may stop speaking at any time.

---

[2] In the 1970s and throughout 1980, it was a regular practice for the prosecutor to ask a judge for a reverse writ if, for example, the police needed to hold a suspect for an additional twenty-four hours to complete their investigation. This practice was later found to be illegal.

Counsel for plaintiff made no objection to the grant of the reverse writ.

As a result of the reverse writ, the police continued to detain plaintiff in order to obtain additional evidence. Plaintiff claims that, during this time, he was harassed by the officers and told that he could not have an attorney. Plaintiff asserts that Ridling instructed him not to seek assistance from an attorney and that he failed to ask for a lawyer when speaking to a friend on the phone because the officers would have discontinued plaintiff's conversation if he had not given the officers' desired responses. Plaintiff asserts that he continued to suffer severe headaches and sleeplessness due to the deprivation of his glasses. He also claims that he was not allowed to wash and that he was scared and crying.

Plaintiff claims that when he refused to give the officers a statement after being pushed by them to do so, Ridling told plaintiff that if he did not confess to the murders, he would be charged with rape. According to plaintiff, Ridling threatened to frame him for alleged sex crimes if he did not confess to the murders. Ridling further told plaintiff that if he would talk about the murders, Ridling would work out a deal with the officers in the sex crime unit so that he wouldn't be prosecuted for the sex crimes. Throughout this interrogation, Ridling provided plaintiff information about the homicides and suggested that plaintiff was mentally unstable. Newcomb and Davies suggested that plaintiff confess to a number of murders to increase his chances of a successful insanity defense.

At approximately 6:00 P.M., on November 7, 1980, Ridling instructed Officer James Harris to conduct another interrogation of plaintiff with

Ridling present. Harris read plaintiff the constitutional rights advisement and proceeded to record plaintiff's statement in writing. Harris then asked plaintiff to read the written statement. Plaintiff looked at the statement and signed it. In that statement, plaintiff confessed to the murder of one of the prostitutes, Betty Rembert, stating that he choked and killed her after picking her up on Woodward near Boston and struggling with her over money after she had performed a sexual act. Plaintiff claims that this statement was not based on his personal knowledge, but, rather, that he merely was providing details about the murder that were given to him by Ridling and others.

Although Ridling seemed satisfied with plaintiff's confession to the Rembert murder, Officer Harris testified that he was concerned about the confession. Harris stated that Ridling had told plaintiff about an article of clothing left on the victim's body and that plaintiff seemed to have been told the information before. Further, Harris believed that plaintiff's version of where the body was found would have increased the possibility of him being seen. Finally, Harris was unsure whether plaintiff even read the confession because he signed it fairly quickly.

After plaintiff's statement, a Squad 7 officer called Richard Krisciunas, the prosecutor assigned to Squad 7, in order to obtain an arrest warrant. Krisciunas reviewed the confession and, after Harris completed the investigator's report, determined there was sufficient evidence to charge plaintiff with second-degree murder. However, because the court closed at 4:30 P.M., plaintiff was not arraigned with regard to the Rembert homicide and the criminal sexual conduct charges brought by Cobb and Favors until 2:00 P.M. the following day, November 8, 1980. Plaintiff was represented by an

attorney at the arraignment and the judge set bond.

On the morning of November 9, 1980, plaintiff was turned over to Davies for additional interrogation. Like Harris, Davies was bothered by plaintiff's initial confession because it was not specific. Davies told plaintiff that he did not believe that the murder occurred in the way that plaintiff described. Plaintiff responded by telling Davies that he had told the entire truth during the initial interrogation. Furthermore, he told Davies that he had killed three or four other women. Plaintiff then provided another confession concerning Rembert's murder, this time changing the location where he allegedly had left the body. He also confessed to the murder of three other prostitutes, Diane Burkes, Jeannette Woods, and Rosemary Frazier. On Monday, November 10, 1980, plaintiff was charged with these three additional murders.

Plaintiff's preliminary examination took place November 18 through November 20, 1980. He was represented by two attorneys during the examination and was bound over on the charges of the four murders to which he had signed confessions.

While plaintiff was in custody, an additional prostitute murder occurred, which, according to Officer Davies, involved the same method of operation as murders to which plaintiff had confessed. In December 1980, Donald Murphy was arrested after a prostitute gave a description of him and his car. On December 14, 1980, Murphy confessed to three of the four homicides with which plaintiff was charged.

After investigating the overlapping confessions concerning Rembert, Burkes, and Woods, Officer Davies concluded that Murphy's confessions were more accurate than plaintiff's. Murphy's description of where he had left Rembert's body exactly

matched where the body had been found. Murphy described how he had killed Rembert with a pickax handle. A pickax handle was later found in his car, stained and imbedded with blood and hair that matched Rembert's. Rembert's autopsy report indicated that she died as a result of a blunt-force trauma, which was consistent with the type of injury that could be inflicted by the ax handle found in Murphy's car. Murphy also accurately identified the location of Woods' body, drew a map of the location of Burkes' body that concurred with where the body had been found, and described details of the Woods and Burkes murders that were consistent with information and evidence Squad 7 had gathered.

After their investigation, Officers Harris and Davies advised their superiors, including Ridling and Hale, as well as the prosecutors, about Murphy's statements. Harris and Davies suggested that the murder charges against plaintiff be dismissed so that they could proceed against Murphy. Ridling, however, did not recommend to the prosecutor's office that the case against plaintiff be dropped because he believed that Murphy had been given information about the details of the murders.

Although he was not involved in the day-to-day investigation, Hale was advised of plaintiff's arrest and received briefings on a regular basis throughout this investigation. Accordingly, Hale was informed of Murphy's arrest and was aware of the overlapping confessions. Hale informed Hart of plaintiff's arrest and confessions. However, Hart stated that he did not recall any discussions regarding plaintiff's case.

As a result of the overlapping confessions and confusion regarding how to proceed, the members of Squad 7 involved in the investigation deter-

mined that a meeting with the prosecutors was needed. The first meeting was held in early January 1981. Chief Assistant Prosecutor Dominic Carnovale, Assistant Prosecutor Timothy Kenney, Krisciunas, Ridling, and Hale met to discuss the concerns that Krisciunas had about plaintiff's and Murphy's confessions and to resolve whether plaintiff or Murphy was responsible for the homicides. At the conclusion of the meeting, Carnovale asked Kenney to investigate the matter further and make a recommendation regarding which individual was responsible for Rembert's death.

After Kenney's investigation, a second meeting was held that was attended by Kenney, Krisciunas, Harris, Davies, Ridling, and Hale. Kenney, Krisciunas, Harris, and Davies concluded that Murphy, not plaintiff, murdered Rembert and believed that all charges against plaintiff should be dismissed. Hale and Ridling, however, continued to believe that the case against plaintiff should continue. After the meeting, Carnovale announced to the press that the prosecution against plaintiff would continue.

When plaintiff's case involving the four murders was presented to Recorder's Court Judge Warfield Moore, the judge suppressed plaintiff's confessions on the grounds that plaintiff had been held too long before being arraigned and that the confessions were involuntary. As a result, the four murder charges against him were dismissed on March 20, 1981. In September and October 1981, plaintiff was tried and acquitted by juries with regard to a charge alleging the armed robbery of a prostitute and the charges of sexual assault brought by Pamela Favors and Renee Cobb.

On February 19, 1982, plaintiff initiated the present suit, asserting common-law tort and civil rights claims. In July 1989, defendants moved for

summary disposition, arguing that the city was entitled to governmental immunity on the state law tort claims and that it was immune from tort liability and vicarious liability for the intentional torts of its police officers in arresting and detaining plaintiff. Further, defendants asserted that defendants Hart and Hale were also entitled to absolute immunity from tort liability because they are high-ranking governmental officials. The court denied the motion.

In their second motion for summary disposition, defendants argued that plaintiff had the burden of pleading facts in avoidance of governmental immunity and that the city was immune from tort liability because the alleged improper acts occurred during the discharge of a governmental function. They also asserted that plaintiff's pleadings failed to show the causal nexus between a policy or practice of the city and the alleged constitutional violation that is required to show a cause of action against a municipality under 42 USC 1983. The motion was adjourned as untimely; defendants later renewed this motion and it was denied.

At trial, Gregory Teeter, plaintiff's expert witness, testified that the police violated their own procedures during plaintiff's first arrest and that their actions did not conform with their own department policy when they arrested, detained, and interrogated plaintiff. Teeter felt that plaintiff was improperly arrested a second time when he was transferred from Highland Park to the Detroit Police Department. He also asserted that Detroit police officers engaged in illegal conduct when they used a reverse writ to detain plaintiff for a period of eighty-six hours. He further opined that the police practiced improper tactics and violated their own policies and procedures when they failed

to stop questioning plaintiff after he requested counsel. Likewise, he felt that the lineup was conducted in a manner that violated. police policies in that it included people of varying heights and ages and was preceded by a face-to-face identification of plaintiff by Favors. Teeter concluded that Ridling, Hale, and Hart were liable for this misconduct because they were aware of it but failed to prevent it.

At the close of plaintiff's proofs, defendants brought a motion for a directed verdict. With regard to the city, defendants argued that there was no liability under § 1983 because there was no proof of a policy, practice, or custom of the city that would support plaintiff's cause of action. With regard to the individual officers' liability under § 1983, defendants argued that plaintiff's claim against them could not succeed because the liability of a supervisor cannot be based on respondeat superior in civil rights cases, and also that the police officers were immune because they made a full and fair disclosure to the prosecutor of all the investigative information available to the police. With regard to plaintiff's claim under 42 USC 1985(3), defendants argued that plaintiff's claim must fail because plaintiff did not present proof of any class-based animus. Finally, defendants argued that plaintiff's claim of malicious prosecution must fail because plaintiff did not present proof of an ulterior motive on the part of defendants. The court denied the motion.

The jury returned its verdict on July 16, 1991. It found in favor of defendants on the claims of false arrest, false imprisonment, and violation of § 1983. It found in favor of plaintiff on the claim of malicious prosecution, and also found that all defendants had conspired against plaintiff in violation of § 1985(3). The jury then awarded plaintiff

compensatory damages of $1,000,000 against the
city only, and punitive damages of $81,000 for
constitutional violations under § 1983 against the
three individual defendants.

On September 13, 1991, the trial court entered a
judgment on the jury verdict of $1,000,000 against
the city with regard to the charges of malicious
prosecution and conspiracy to violate plaintiff's
civil rights under §§ 1983 and 1985, and $27,000
for the same offenses against each of the individ-
ual defendants. Defendants moved to set aside the
judgment, arguing that it did not conform with the
jury's verdict form. The court denied the motion,
ruling that the judgment conformed in all respects
to the jury verdict. Plaintiff then moved for costs
and attorneys fees, which the court granted pursu-
ant to 42 USC 1988.

The conduct at issue in this case is alleged to
constitute a tort or a civil rights violation, or both.
We will discuss each defendant's liability with
regard to the claim of malicious prosecution, the
claim regarding § 1985(3), and the claim regarding
§ 1983.

I

MALICIOUS PROSECUTION

A

The city argues that, as a matter of law, the
governmental immunity act precludes it from tort
liability. Although plaintiff does not clearly differ-
entiate between direct and vicarious liability theo-
ries in his pleadings, his claim of malicious prose-
cution against the city appears to focus solely on
vicarious liability.

Under MCL 691.1407; MSA 3.996(107), govern-
mental agencies are immune from tort liability

where they are engaged in the exercise or discharge of a governmental function. A governmental function is an activity expressly or impliedly mandated or authorized by the constitution, statute, or other provision of law. *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 620; 363 NW2d 641 (1984). The immunity granted by the statute to a municipality is based upon the general nature of the activity of its employees, rather than the specific conduct of its employees. *Smith v Dep't of Public Health,* 428 Mich 540, 608; 410 NW2d 749 (1987), aff'd sub nom *Will v Michigan Dep't of State Police,* 491 US 58; 109 S Ct 2304; 105 L Ed 2d 45 (1989). As the *Smith* Court noted, "to use anything other than the general activity standard would all but subvert the broad governmental immunity intended by the Legislature. . . . [I]t would be difficult to envision a tortious act that is a governmental function." *Smith, supra* at 609. Also, there is no exception in the governmental immunity statute for intentional torts. *Id.* See also *Bischoff v Calhoun Co Prosecutor,* 173 Mich App 802; 434 NW2d 249 (1988).

In this case, the alleged tort of malicious prosecution occurred while the city officials were engaged in activities related to the operation of the city's police force. The authority of the city's police officers to "pursue, arrest and detain" those suspected of violating the laws of Michigan is expressly granted. MCL 117.34; MSA 5.2114. There are few functions more clearly governmental in nature than the arrest, detention, and prosecution of persons suspected of having committed a crime and the decisions involved in determining which suspects should be prosecuted and which should be released. Because the general nature of the activity in this case related to the operation of the police force, the city is immune from liability

pursuant to MCL 691.1407(1); MSA 3.996(107)(1). See *Markis v Grosse Pointe Park,* 180 Mich App 545, 557; 448 NW2d 352 (1989), in which the Court held that the city and its officials were entitled to immunity from tort liability for activities related to the operation of the police force. As the *Ross* Court noted:

> [A] city cannot be held vicariously liable for torts of its police officers committed during the course of an arrest because the officers were engaged in police activity, which is a governmental function entitled to immunity. [*Ross, supra* at 625, citing *Sherbutte v Marine City,* 374 Mich 48, 50; 130 NW2d 920 (1964).]

Further, even if the officers were not engaged in the exercise of a governmental function within the scope of their employment, the city is nonetheless entitled to immunity because it cannot be held liable for the intentional torts of its employees. *Alexander v Riccinto,* 192 Mich App 65, 71-72; 481 NW2d 6 (1991).

Plaintiff's position is that the malicious prosecution statute, MCL 600.2907; MSA 27A.2907, which by its terms extends liability to "every person," should be read to include bodies politic and corporate pursuant to MCL 8.3-1; MSA 2.212(12). Plaintiff's argument ignores the basic rule of statutory construction that a specific statute supersedes a contradictory general statute. *Baxter v Gates Rubber Co,* 171 Mich App 588, 590; 431 NW2d 81 (1988). The malicious prosecution statute is general. It gives broad authority for many persons and entities to be sued. Conversely, the governmental immunity statute, MCL 691.1407; MSA 3.996(107), is specific in granting immunity to governmental agencies. Thus, pursuant to the doctrine that the specific takes precedence over the

general, the governmental immunity statute trumps the malicious prosecution statute. The malicious prosecution statute cannot be read as authorizing malicious prosecution actions against municipalities in abrogation of the doctrine of governmental immunity.

Accordingly, we reverse the judgment against the city for malicious prosecution and remand for entry of a judgment in favor of the city.

B

With regard to his tort liability, Police Chief Hart argues that he is immune from tort liability as one of the highest level officials of the city. *Ross, supra.* As this Court held in *Meadows v Detroit,* 164 Mich App 418, 426-427; 418 NW2d 100 (1987), when acting in his executive authority, the police chief of the City of Detroit is absolutely immune from tort liability. Accordingly, we agree with defendant Hart that the trial court erred in denying his motion for summary disposition regarding the tort claims of false arrest, false imprisonment, and malicious prosecution. *Ross, supra; Meadows, supra.* We reverse the judgment against Hart regarding the claim of malicious prosecution and remand for entry of a judgment in his favor.

C

With regard to defendants Hale and Ridling, we conclude that the trial court erred in denying their motion for a directed verdict regarding plaintiff's claim of malicious prosecution. In order to state a prima facie case of malicious prosecution, the plaintiff must prove:

   1. Prior proceedings terminated in favor of the present plaintiff;

2. Absence of probable cause for those proceedings;

3. Malice, defined as a purpose other than that of securing the proper adjudication of the claim; and

4. A special injury that flows directly from the prior proceedings. [*Young v Motor City Apartments Ltd,* 133 Mich App 671, 675; 350 NW2d 790 (1984).]

"It is well-settled that one who makes a full and fair disclosure to the prosecutor is not subject to an action for malicious prosecution." *Koski v Vohs,* 426 Mich 424, 439; 395 NW2d 226 (1986).

We note that "[a]ctions for malicious prosecution are regarded by law with jealousy and they ought not to be favored but managed with great caution." *Roblyer v Hoyt,* 343 Mich 431, 435; 72 NW2d 126 (1955). Furthermore, "'the only situation in which an action for malicious prosecution would properly lie is where a police officer knowingly swears to false facts in a complaint, without which there is no probable cause.'" *King v Arbic,* 159 Mich App 452, 466; 406 NW2d 852 (1987), quoting *Belt v Ritter,* 18 Mich App 495, 503; 171 NW2d 581 (1969). Failure to include all exculpatory facts is not adequate to sustain a suit for malicious prosecution. *King, supra* at 466-467. In the final analysis, the Court in *King* has narrowly focused the issue as

[i]s there any evidence in the record, as it exists, which would give rise to the inference that defendant . . . knowingly included false facts in his incident report, without which the prosecutor could not have concluded there was probable cause? [*Id.* at 466.]

In this case, Hale, Ridling, and other officers

attended meetings with members of the prosecutor's office in which they disclosed information relevant to the investigation of plaintiff and made full and fair disclosure to the prosecutor's office regarding all material facts within their knowledge, including the conflicting confessions of plaintiff and Murphy. Accordingly, probable cause was established and barred plaintiff's right to recover. *Koski, supra; Modla v Miller,* 344 Mich 21, 22; 73 NW2d 220 (1955).

We reverse the judgment in favor of plaintiff regarding the claim of malicious prosecution and remand for entry of a judgment in favor of defendants Hale and Ridling.

II

42 USC 1985(3)

Defendants next argue that the trial court erred in failing to direct a verdict in their favor regarding plaintiff's claim of conspiracy under § 1985(3). We agree.

In order to sustain a claim under 42 USC 1985(3), the plaintiff must prove the existence of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v Breckenridge,* 403 US 88, 102; 91 S Ct 1790; 29 L Ed 2d 338 (1971); *United Brotherhood of Carpenters, Local 610 v Scott,* 463 US 825, 834; 103 S Ct 3352; 77 L Ed 2d 1049 (1983). Because plaintiff presented no evidence that defendants acted pursuant to racial or class-based discrimination in pursuing the charges against him, he has failed to establish a claim under § 1985(3). Accordingly, the trial court erred in refusing to grant defendants' motion for a directed verdict on this count. To the extent that

plaintiff claims a conspiracy to violate his civil rights is actionable under § 1983, we find that plaintiff's conclusory allegations of a conspiracy will not suffice. Plaintiff failed to present material facts showing the existence and scope of a conspiracy. *Stern v Sommerville Communications Corp,* 529 F Supp 29, 30 (ED Mich, 1981).

We reverse the judgment in favor of plaintiff regarding the claim under § 1985(3) and remand for entry of a judgment in favor of defendants.

### III

#### 42 USC 1983

With regard to plaintiff's claims regarding § 1983, the judgment must be set aside because it is self-contradictory. Although the jury found that defendants did not violate plaintiff's civil rights pursuant to § 1983, it nonetheless awarded plaintiff punitive damages for violations of § 1983. "[T]he general rule is that where a verdict in a civil case is inconsistent and contradictory, it will be set aside and a new trial granted." *Harrington v Velat,* 395 Mich 359, 360; 235 NW2d 357 (1975). To the extent that the verdicts regarding the claims under § 1983 are irreconcilable, we remand this case to the trial court. In order to illuminate the issues on remand, we will address the arguments made regarding the claims under § 1983 raised in the appeal and cross appeal.

Initially, we note that any cause of action brought in a state court under § 1983 requires this Court to review the federal law interpreting that statute. *Markis, supra.* The determination of the immunity to be accorded as a defense in a suit under § 1983 is entirely a question of federal law. State immunities and defenses are irrelevant in a litigation under § 1983 even when brought in state

court. *Martinez v California,* 444 US 277, 285, n 11; 100 S Ct 553; 62 L Ed 2d 481 (1980).

### A

The city argues that the trial court abused its discretion in failing to direct a verdict in the city's favor regarding plaintiff's claim under § 1983 against it for failure to adequately train its police officers. We agree because plaintiff failed to prove that the city had a custom or policy that violated the constitution or laws of the United States.

Section 1983 provides a federal remedy against any person who, under color of state law or custom having the force of law, deprives another of rights protected by the constitution or laws of the United States. *Monell v Dep't of Social Services of the City of New York,* 436 US 658, 690-691; 98 S Ct 2018; 56 L Ed 2d 611 (1978). A municipality can be held liable under § 1983 for its policies that violate the constitution or laws of the United States. No respondeat superior liability is permitted. *Id.* A municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Mudge v Macomb Co,* 210 Mich App 436, 446; 534 NW2d 539 (1995). Thus, in order to sustain a cause of action against a municipality under § 1983, a plaintiff must show that an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Collins v Harker Heights,* 503 US 115, 121; 112 S Ct 1061; 117 L Ed 2d 261 (1992).

> "[The] first inquiry in any case alleging munici-
> pal liability under § 1983 is the question whether
> there is a direct causal link between a municipal
> policy or custom and the alleged constitutional
> deprivation." [*Id.* at 123, quoting *Canton v Harris,*

489 US 378, 385; 109 S Ct 1197; 103 L Ed 2d 412 (1989).]

Usually, a policy involves formal approval from official decision-making channels. *Monell, supra* at 691. However, the plaintiff may assert and prove that the policy-making officials of the municipality deliberately approved an unconstitutional custom or practice. As our Supreme Court said in *York v Detroit (After Remand),* 438 Mich 744, 756; 475 NW2d 346 (1991), quoting, with approval, *Canton v Harris, supra* at 396 (O'CONNOR, J. concurring):

> "Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied. Only then can it be said that the municipality has made 'a deliberate choice to follow a course of action . . . from among various alternatives.' "

Finally, a policy or custom may be inferred from acts or omissions of a municipality's supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitutional rights of the plaintiff. *Villante v Dep't of Corrections of City of New York,* 786 F2d 516, 519 (CA 2, 1986); *Turpin v Mailet,* 619 F2d 196, 201 (CA 2, 1980), cert den 449 US 1016 (1980). Negligence is not a sufficient basis for imposing liability upon a municipality under § 1983. *Hickey v Zezulka (On Resubmission),* 439 Mich 408, 427-431; 487 NW2d 106 (1992). Rather, "deliberate indifference" of the municipality is required. That includes "knowledge, actual or constructive, and a conscious disregard of a known danger" by the policy-making official. *York, supra* at 757; *Davis v*

*Wayne Co Sheriff,* 201 Mich App 572, 581; 507 NW2d 751 (1993).

In this case, plaintiff, in opposition to the motion for summary disposition, argued that inadequate training was the policy or custom that caused the constitutional violations. A municipality may be liable under § 1983 if it had a policy or custom of failing to train its employees and that failure to train caused the constitutional violation. *Collins, supra* at 123.

> [T]he inadequate training of police officers could be characterized as the cause of the constitutional tort if—and only if—the failure to train amounted to "deliberate indifference" to the rights of persons with whom the police come in contact. [*Id.* at 123-124.]

At trial, plaintiff presented no evidence that the police officers received inadequate training. Because plaintiff failed to prove that the officers were inadequately trained, he failed to prove that the lack of training caused the alleged constitutional torts. *Id.*

In his brief on appeal, plaintiff, relying on *Grandstaff v City of Borger,* 767 F2d 161, 171 (CA 5, 1985), and *Pembaur v Cincinnati,* 475 US 469; 106 S Ct 1292; 89 L Ed 2d 452 (1986), asserts that "the unconstitutional conduct and the number of officers involved stands as circumstantial evidence of 'custom.'" Plaintiff's reliance on *Grandstaff,* however, is misbegotten because, in 1989, the Supreme Court expressed the brightline rule that

> [a] municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." [*Canton, supra* at 389.]

This standard was explained well by Judge Patrick Higginbotham in *Gonzalez v Ysleta Independent School Dist,* 996 F2d 745, 755-759 (CA 5, 1993):

> [W]here . . . a policy in some sense causes, but does not compel, a constitutional violation, plaintiffs must establish that the particular harm-producing deficiency "resulted from conscious choice," that is, they must supply "proof that the policymakers deliberately chose [measures] which would prove inadequate.". . .
>
> \* \* \*
>
> In order for municipal liability to attach, plaintiffs must offer evidence of not simply a decision, but a "decision by the city itself to violate the Constitution." Inadequate, but constitutional policies and decisions rise to the same, actionable plane . . . only upon a showing that they were enacted or made with deliberate indifference to their possible unconstitutional consequences.

The Michigan Supreme Court and this Court have adopted the same standard as that articulated by Judge Higginbotham in *Gonzales.* See *York, supra; Davis, supra.* Thus, in order to show that the city is liable under § 1983, plaintiff must show that the city's policymakers deliberately made a decision to adopt or adhere to a policy or to decline to interfere with an ongoing policy. *York, supra* at 755; *Davis, supra* at 580-581.

In this case, plaintiff failed to identify any formal or informal policy or practice made or approved by the city or its Board of Police Commissioners that caused him harm. Plaintiff also failed to show that the city or the board had knowledge of any conduct on the part of its police officers that reflected deliberate indifference on the part of the city to the constitutional rights of individuals.

As this Court has recently ruled, a plaintiff's

claims against a municipality must fail where the plaintiff has offered no evidence showing "that a municipal custom or policy caused a violation of the victim's constitutional rights." *Mollett v City of Taylor,* 197 Mich App 328, 344; 494 NW2d 832 (1992). The evidence presented at trial shows only the fact that several officers acted together with respect to plaintiff and that there was a difference of opinion among members of the police department and among members of the Wayne County Prosecuting Attorney's office regarding the wisdom of continuing the prosecution against plaintiff. There was no showing of deliberate indifference with knowledge, actual or constructive, and a conscious disregard of a known danger by the policymakers of the city or by the city itself. *York, supra* at 755. Accordingly, because no city policy or custom was implicated, the city's motion for a directed verdict with regard to the claims under § 1983 should have been granted. We reverse plaintiff's judgment against the city regarding § 1983 and remand for entry of a judgment in favor of the city.

B

With regard to defendant Hart, as a supervisory official, his liability under § 1983 must be based on more than his right to control employees. *Bellamy v Bradley,* 729 F2d 416, 421 (CA 6, 1984). A supervisory official's liability under § 1983 cannot be based solely on the theory of respondeat superior. *Id.* In order for plaintiff to hold Hart liable for violations of his civil rights,

> [t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a

> supervisory official at least implicitly authorized,
> approved or knowingly acquiesced in the unconsti-
> tutional conduct of the offending subordinate. [*Id.*]

For example, in *Smith v Heath,* 691 F2d 220 (CA
6, 1982), a police supervisory officer was liable
under § 1983 because he, as the officer in charge of
the investigation, was directly responsible for and
personally participated in the unconstitutional
search of the plaintiff's home.

In this case, Hart was not directly involved in
the investigation or prosecution of plaintiff. At
trial, plaintiff's evidence showed that defendant
Hale informed Hart of plaintiff's arrest and confes-
sions. However, this evidence is insufficient to
support a finding that Hart authorized, approved,
or knowingly acquiesced in the alleged unconstitu-
tional conduct of Hale, Ridling, and the other
Squad 7 officers. Accordingly, plaintiff's judgment
against Hart under § 1983 is reversed, and the
case is remanded for entry of a judgment in favor
of defendant Hart.

C

With regard to Hale's and Ridling's liability
under § 1983, the claim should have been dis-
missed because the conduct plaintiff challenges
was their recommendation to the prosecutor to
continue the case against plaintiff. They claim that
they are entitled to prosecutorial immunity for
their role in sifting and assessing the evidence and
making a recommendation to facilitate the prose-
cutor's decision to move forward with the prosecu-
tion.

In essence, plaintiff's claim under § 1983 against
both Hale and Ridling is based on the theory they
were involved in a conspiracy to maliciously prose-

cute him. Plaintiff asserts that Hale and Ridling should be held liable as coconspirators with the Wayne County Prosecutor. In his brief on appeal, plaintiff contends that Hale and Ridling successfully persuaded the prosecutors to prosecute him by giving them false information. Plaintiff's claim must fail given the United States Supreme Court's recent decision in *Albright v Oliver,* 510 US —; 114 S Ct 807; 127 L Ed 2d 114 (1994).

The *Albright* Court held that a prosecution without probable cause is not actionable under § 1983 as a violation of substantive due process rights under the Fourteenth Amendment. Thus, in order to prevail under § 1983, a plaintiff who is improperly prosecuted and arrested must show some independent violation of a right protected by the constitution or federal law. *Id.* In this case, plaintiff's evidence was insufficient to make such a showing against Hale and Ridling. Accordingly, the civil rights claim under § 1983 based on malicious prosecution, and a conspiracy to further that, will not lie. We reverse the judgment in favor of plaintiff and remand for entry of a judgment in favor of defendants Hale and Ridling regarding the claim under § 1983 based on malicious prosecution.

### D

Plaintiff's claims under § 1983 against defendant Ridling also involve Ridling's actions during plaintiff's initial arrest, detention, and interrogation. Ridling argues that the jury must have concluded that there were no civil rights violations in the arrest, detention, and interrogation of plaintiff. In fact, that may have been the case, but, the jury's contradictory verdict makes it impossible to discern. Accordingly, with regard to plaintiff's civil

rights claims involving his arrest, detention, and interrogation, we remand for a retrial with regard to defendant Ridling. *Herrington, supra.*

### DOCKET NO. 148435

Given our disposition in Docket No. 148260, we vacate the trial court's order awarding plaintiff attorney fees pursuant to 42 USC 1988. Docket No. 148260, reversed and remanded; Docket No. 148435, vacated.