*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BROC RITTENHOUSE,

Plaintiff-Appellant,

v

DEREK DIXON,

Defendant-Appellee.

UNPUBLISHED
October 16, 2024
10:49 AM

No. 366376
Dickinson Circuit Court
LC No. 2021-020439-CZ

Before: RIORDAN, P.J., and YOUNG and WALLACE, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting summary disposition in defendant's favor on the ground that governmental immunity barred this action alleging malicious prosecution, abuse of process, and intentional infliction of emotional distress arising from plaintiff's prosecution on criminal charges. We affirm.

## I. BACKGROUND

Defendant is a detective lieutenant with the Dickinson County Sheriff's Office and coordinates the KIND[1] Drug Enforcement Team. This case arises from defendant's criminal investigation of plaintiff. Plaintiff alleged that defendant fabricated statements included in a KIND Drug Investigation Report ("the KIND 18-19 report") to support that plaintiff aided and abetted another individual, Rodgers Shealy,[2] to assault and intimidate a confidential informant, Montgomery Tappy, so that Tappy would not testify at an upcoming criminal trial against plaintiff's girlfriend, Nadine Johnson. Plaintiff claimed that defendant was motivated to fabricate

---

[1] The acronym "KIND" stands for the four law enforcement departments involved in the program, including the Kingsford Public Safety Department, the Iron Mountain Police Department, the Norway Police Department, and the Dickinson County Sheriff's Department.

[2] We note Shealy's first name is sometimes spelled "Rogers" in various documents in the lower court record. We use the "Rodgers" spelling, which is how the name appears in the investigative report giving rise to this case.

information on the KIND 18-19 report because plaintiff's uncle, Daniel Rittenhouse (Daniel), sued defendant in a 2016 civil case and obtained a settlement in Daniel's favor.

In the fall of 2018, Tappy engaged in two "controlled buy" drug sales with Johnson. Tappy then became a witness against Johnson after she was charged with various drug-related crimes. On March 4, 2019, Shealy, who is also known as Big Brother, assaulted Tappy. Plaintiff heard the assault over the telephone. Plaintiff, an automobile mechanic, performed work on Shealy's van later that day. Shortly before that, in February 2019, plaintiff had also performed work on Shealy's van. Shealy did not pay plaintiff for the work he performed either time on the van. The critical issue was whether plaintiff performed the work on Shealy's van in exchange for the assault on Tappy.

Plaintiff and Johnson spoke about the assault through a series of eight jail calls while Johnson was incarcerated pending her trial. Defendant listened to all the jail calls as part of his investigation against Johnson. Plaintiff takes issue with the following statement defendant made in the KIND 18-19 report relating to the first jail call, which we will refer to as Jail Call 1: "Johnson was happy Shealy did that and refers to him as 'Big Brother' in the call. Rittenhouse says yes and that he has to do free work for Shealy on his van now as payment." According to plaintiff, the statement defendant fabricated in the KIND 18-19 report was that plaintiff "admitted doing free work . . . as payment" for the assault.

Based on the jail calls, defendant believed he had enough circumstantial evidence to present the case against plaintiff to the prosecutor's office for review. From there, the assistant prosecutor assigned to the case, Alexander Sieminski, decided whether to charge plaintiff with a crime. After reviewing defendant's report, the corresponding exhibits, and several jail calls, Sieminski pursued charges against plaintiff for assault or assault and battery, MCL 750.81(1), and witness intimidation by committing a crime or threatening to kill or injure, MCL 750.1227(c), both under an aiding and abetting theory.

Tappy and defendant testified at plaintiff's preliminary examination. The district court reviewed approximately 5 minutes and 29 seconds of Jail Call 1, which is about 15 minutes long. It is not clear exactly what segment of the jail call the court reviewed. The district court found probable cause to bind plaintiff over to the circuit court for trial.

Plaintiff moved to quash the information in the circuit court. The circuit court concluded that the district court abused its discretion by making findings unsupported by the record and failing to outline the elements of the crimes. The circuit court further ruled that the district court abused its discretion by finding that a tie existed between the free mechanical work and the assault. The circuit court reasoned that plaintiff may have simply been happy that the assault occurred and that is why he performed the free work. Accordingly, the circuit court quashed the bindover.

Subsequently, plaintiff filed this action against defendant alleging malicious prosecution, abuse of process, and intentional infliction of emotional distress. Plaintiff's claims were based on defendant's statements made in the KIND 18-19 report and his testimony at plaintiff's preliminary examination. Defendant moved for summary disposition under MCR 2.116(C)(7) (immunity) and (C)(10) (no genuine issue of material fact), arguing, in relevant part, that plaintiff's claims were barred by governmental immunity and quasi-judicial immunity. Plaintiff responded, arguing, in

relevant part, that there was a question of fact on whether defendant acted in good faith and without malice, and that plaintiff could use defendant's preliminary-examination testimony to support his claims despite defendant's assertion of quasi-judicial (witness) immunity. Following a hearing, the trial court ruled that defendant was entitled to governmental and quasi-judicial immunity as it related to each of plaintiff's claims. The court reasoned that there was no evidence to dispute that defendant acted in good faith and without malice. This appeal followed.

## II. IMMUNITY

Plaintiff raises three arguments on appeal, but for the reasons discussed, we conclude that the immunity issue is dispositive. Regarding immunity, plaintiff argues that the trial court erred by granting summary disposition to defendant on the basis of governmental and quasi-judicial immunity. We disagree.

## A. STANDARD OF REVIEW

We review de novo the trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition under MCR 2.116(C)(7) is warranted if the claim is barred by immunity granted by law. *Pike v Northern Mich Univ*, 327 Mich App 683, 690; 935 NW2d 86 (2019). When we consider a motion for dismissal based on governmental immunity under MCR 2.116(C)(7), we review the evidentiary support such as affidavits, depositions, and admissions, as well as pleadings, to determine whether the claim is barred by immunity. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). A complaint's allegations are accepted as true unless contradicted by the documentary evidence. *Id*. "If there is no factual dispute, a trial court must determine whether summary disposition is appropriate under MCR 2.116(C)(7) as a matter of law." *Pike*, 327 Mich App at 690-691. We also review de novo as a question of law whether governmental immunity applies in a particular case. *Id*. at 690; *Herman v Detroit*, 261 Mich App 141, 143; 680 NW2d 71 (2004).

## B. GOVERNMENTAL IMMUNITY

First, we conclude that plaintiff's claims arising from defendant's statements made in the KIND 18-19 report were barred by governmental immunity.

The parties agree that because this case involves three intentional-tort claims arising from the same factual circumstances, the qualified governmental immunity test outlined in *Odom v Wayne Co*, 482 Mich 459, 480; 760 NW2d 217 (2008), applies. In *Odom*, our Supreme Court outlined a three-part test for determining whether governmental employees, such as police officers, are entitled to qualified immunity for intentional torts: (1) the employee must be acting in the course of employment and acting, or reasonably believed they were acting, within the scope of their authority, (2) the employee must be acting in good faith and without malice, and (3) the employee must be carrying out a discretionary act, rather than a ministerial act. *Id*.

In this case, the parties do not dispute that defendant was a governmental employee acting within the scope and course of his employment and that he was carrying out a discretionary act. They also do not dispute that he raised governmental immunity as an affirmative defense.

Therefore, the only element at issue on appeal is whether defendant was acting in good faith and without malice.

The *Odom* Court explained that the good-faith element is subjective in nature. *Id.* at 481-482. "It protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Id.* at 482. In other words, a governmental employee does not act in "good faith" if the employee acts "maliciously or with a wanton or reckless disregard of the rights of another." *Id.* at 474 (citation and emphasis omitted). "[W]illful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Id.* at 475, quoting *Burnett v City of Adrian*, 414 Mich 448, 455; 326 NW2d 810 (1982).

Plaintiff relies on three arguments in support of his claim that a factual dispute exists on the good-faith element. After review of the record, we conclude that these arguments are without merit and there is no factual dispute on the good-faith element in this case. That is, plaintiff's evidence is insufficient for a reasonable jury to conclude that defendant did not act in good faith or that he acted with malice.

First, plaintiff argues that defendant made factually inaccurate statements in the KIND 18-19 report. But "showing that an officer made a mistake does not defeat an immunity defense." *Latits v Phillips*, 298 Mich App 109, 115; 826 NW2d 190 (2012). Thus, even if defendant's statements in the KIND 18-19 report were inaccurate, this fact alone does not create a factual dispute on whether defendant failed to act in good faith and without malice.

Moreover, when the statement at issue is considered in the context of all eight jail-call recordings, it becomes evident that defendant made a reasonable inference about plaintiff's intentions. The allegedly false statement in the KIND 18-19 report was defendant's statement that "Johnson was happy Shealy did that and refers to him as 'Big Brother' in the call. Rittenhouse says yes and that he has to do free work for Shealy on his van now as payment." Plaintiff is correct that he did not state expressly in Jail Call 1 that he was going to do free work on Shealy's van in exchange for the assault. Rather, after plaintiff told Johnson about the assault, Johnson asked plaintiff, "Big Brother did that?" Plaintiff responded, "Yes." Johnson said, "Tell him I love him! Thank you." Plaintiff then said, "I know, I'm about to do some free work on his f****** car for him, but yeah, because me and him are pretty tight. And he, uh, hopefully, uh, you know, did it enough where he won't go to where he's gotta go and hopefully he'll just leave, or run away, or just crawl into a hole or something, but not do what he's supposed to do to f*** you up."

It is possible that plaintiff was coincidentally informing Johnson that he was planning to perform free work on Shealy's van. However, we agree with the trial court's assessment that "[i]t would be quite a non sequitur for Mr. Rittenhouse to simply out of the blue, start talking about some free work he's going to do on Mr. Shealy's van, when the subject of the discussion was clearly the assault that Mr. Shealy had perpetrated on Mr. Tappy . . . ." Defendant considered all eight jail calls in context when he prepared the statements in the KIND 18-19 report and reasonably inferred that the free labor was in exchange for the assault. For example, plaintiff stated later in the same call that "the plan" was for Johnson's court date to be canceled. If there were any doubt about whether the free work was tied to the assault, plaintiff later revealed in the third call, which

-4-

we will refer to as Jail Call 3, that the free work was in relation to Shealy's assault on Tappy. Plaintiff explained in the call that he "did free labor, you know, for him today, cause he's awesome today. But he's got to pay for the part." Plaintiff provides no alternative explanation for his statement in Jail Call 3. So, defendant's statement in the KIND 18-19 report, that the free work was a form of payment for the assault, was a reasonable interpretation of Jail Call 1 when considered in the context of all eight jail calls.

Second, plaintiff argues that evidence exists to support a lack of good faith because there was no probable cause for the criminal prosecution of plaintiff. But defendant did not institute the criminal prosecution of plaintiff—the assistant prosecutor, Sieminski, did and he did so after personally reviewing the evidence, listening to most of the jail calls, and exercising his professional legal judgment.[3] However, to the extent that plaintiff is arguing that defendant knowingly included false facts in the KIND 18-19 report, such claim also fails because the probable cause determination did not exclusively rely on that report. See *Payton v Detroit*, 211 Mich App 375, 395; 536 NW2d 233 (1995) ("[T]the only situation in which an action for malicious prosecution would properly lie is where a police officer knowingly swears to false facts in a complaint, without which there is no probable cause." (quotation marks and citations omitted)).[4]

Finally, plaintiff argues that defendant "had it in" for his family after his uncle, Daniel, sued defendant and recovered money through a settlement. However, as Daniel recognized during his deposition, there was no "definitive proof" that defendant was motivated to go after the Rittenhouse family. So, plaintiff's argument that defendant had a vendetta against his family was mere speculation. See *Ghaffari v Turner Constr Co (On Remand)*, 268 Mich App 460, 464-465; 708 NW2d 448 (2005) ("Speculation and conjecture are insufficient to create an issue of material fact."). The test for determining good faith is subjective. *Odom*, 482 Mich at 481-482. For his part, defendant denied that Daniel's lawsuit caused him to have any animosity toward the Rittenhouse family. He explained that his insurance carrier paid the settlement in Daniel's case

---

[3] See *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 22 n 17; 672 NW2d 351 (2003) ("The prosecutor's exercise of his independent discretion in initiating and maintaining a prosecution is generally a complete defense to an action for malicious prosecution.").

[4] We also reject plaintiff's claim that defendant is collaterally estopped from arguing probable cause existed to support plaintiff's criminal prosecution in light of the circuit court's holding that no probable cause existed for the bindover. In brief, collateral estoppel does not apply because the issues in this civil case against defendant and the issues in the criminal prosecution of plaintiff are clearly not identical. See *Romig Estate v Boulder Bluff Condos Units 73-123, 125-146, Inc (On Remand)*, 344 Mich App 1, 6; 998 NW2d 715 (2022) (citation omitted). Further, defendant was not a party to the criminal case and was not in privity with the prosecution. See *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, 509 Mich 276, 283; 983 NW2d 401 (2022) (citations omitted); *People v Zitka*, 325 Mich App 38, 46; 922 NW2d 696 (2018) (citation omitted). Finally, because plaintiff asserts collateral estoppel offensively, he must establish mutuality of estoppel and he cannot because, again, defendant was not a party in the case of plaintiff's criminal prosecution. See *Monat v State Farm Ins Co*, 469 Mich 679, 680-681, 691-692; 677 NW2d 843 (2004).

on his behalf, and the lawsuit did not take time out of his schedule. Plaintiff does not point to any other evidence that would support that defendant acted with anything other than an honest belief that his statements in the KIND 18-19 report were accurate. Therefore, there is no evidence in the record to support plaintiff's position that Daniel's lawsuit motivated defendant to fabricate any statements against him.[5]

In summary, considering the evidence, a reasonable jury could not conclude that defendant failed to act in good faith or acted with malice, and thus, plaintiff's intentional-tort claims arising from defendant's statements made in the KIND 18-19 report were barred by governmental immunity granted by law.

## C. QUASI-JUDICIAL IMMUNITY

Plaintiff's claims arising from defendant's preliminary-examination testimony are also barred by quasi-judicial immunity. " '[W]itnesses who testify during the course of judicial proceedings enjoy quasi-judicial immunity.' " *Voutsaras Estate by Gaydos v Bender*, 326 Mich App 667, 674; 929 NW2d 809 (2019) (alteration in original), quoting *Maiden*, 461 Mich at 134. Because witnesses are integral to the judicial process, and must be allowed to assert themselves without fear of retaliation, they are immune from liability for claims arising from their testimony. *Voutsaras Estate*, 326 Mich App at 674, quoting *Maiden*, 461 Mich at 134. Even false or malicious statements are privileged. *Voutsaras Estate*, 326 Mich App at 674, quoting *Maiden*, 461 Mich at 134.

In his complaint, plaintiff asserted that defendant made false statements in both the KIND 18-19 report and during the preliminary examination, which caused plaintiff to suffer damages. However, as the trial court concluded, defendant's preliminary-examination testimony was protected by quasi-judicial immunity. Any statements defendant made during the proceeding were absolutely privileged, even if they were false or malicious. The only exception to the absolute privilege is when the statements are not relevant, material, or pertinent to the issue being tried. *Voutsaras Estate*, 326 Mich App at 674, quoting *Maiden*, 461 Mich at 134. But defendant's testimony related to his investigation of the assault on Tappy and the KIND 18-19 report. Thus, the statements were relevant, material, and pertinent to the assault and witness-intimidation

---

[5] We are unpersuaded by plaintiff's citation to *Akima v Peca*, 85 F4th 416 (CA 6, 2023), a federal case analyzing the issue of qualified immunity under federal law which has a different legal framework than qualified immunity under our state law. Under federal law, qualified immunity is not available if a clearly established constitutional right is violated. *Id*. at 422. In *Akima*, the appellate court held that a jury could conclude the defendant police officer effected a warrantless arrest without probable cause, and thus, was not entitled to qualified immunity. *Id*. at 422-423, 428. That is, the two grounds asserted in support of probable cause—driving without a license and driving while intoxicated—could be found insufficient because the plaintiff was not given a reasonable opportunity to produce his license as required by law and the officer unreasonably misread the breathalyzer result as 0.22 and not the actual result of 0.02. *Id*. at 424, 428. In any case, the state qualified-immunity standard outlined in *Odom* controls here.

charges against plaintiff. Therefore, defendant was entitled to quasi-judicial immunity for his preliminary-examination testimony.[6]

To the extent plaintiff is arguing that defendant's preliminary examination testimony can be used as evidence to prove defendant's malice with regard to plaintiff's intentional-tort claims, we reject that contention. Such an interpretation negates the purpose of witness immunity, which is to promote candid testimony from witnesses without fear of retaliation. See *Voutsaras Estate*, 326 Mich App at 674, quoting *Maiden*, 461 Mich at 134.

In summary, plaintiff's claims arising from defendant's preliminary-examination testimony are barred by quasi-judicial immunity, and defendant's testimony cannot be used to prove plaintiff's intentional-tort claims asserted against defendant.

In conclusion, the trial court did not err by granting defendant's motion for summary disposition under MCR 2.116(C)(7) because plaintiff's claims are barred by immunity granted by law.

Affirmed.

/s/ Michael J. Riordan
/s/ Adrienne N. Young
/s/ Randy J. Wallace

---

[6] Because the trial court correctly concluded that plaintiff's claims against defendant relating to the KIND 18-19 report and the preliminary-examination testimony were barred by immunity, we need not address plaintiff's additional issues on appeal.